2008-NMCA-035

180 P.3d 675

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Frank J. DOMBOS, Defendant–Appellant.**

No. 26,070.

Court of Appeals of New Mexico.

Jan. 16, 2008.

Certiorari Denied, No. 30,902,
Feb. 27, 2008.

Gary K. King, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant was convicted of one count each of false imprisonment and interference with communications; two counts each of criminal sexual penetration (CSP), kidnapping, and attempted CSP resulting in physical injury; and three counts of battery on a household member. All of the convictions stemmed from Defendant's relationship with his wife during a three-week period in February 2004 while they lived in Alamogordo, New Mexico. On appeal, Defendant challenges several of his convictions on due process and double jeopardy grounds, argues that the trial court made multiple errors that deprived him of a fair trial, claims that he was not afforded effective assistance of counsel, and argues that he was subject to prosecutorial misconduct. We affirm.

## I. BACKGROUND

{2} The following facts derive primarily from the testimony of Ms. Dombos. Defendant met her in late November 2003. Ms. Dombos lived in a trailer park in Tucson, Arizona, where Defendant worked as a maintenance man. Ms. Dombos had diabetes and was living on Social Security disability benefits she received for her diabetes and depression. Defendant and Ms. Dombos quickly developed a friendship and within a few days began living together. The relationship that developed between the two involved a routine of daily drinking to the point of intoxication, talking, sleeping, and having daily consensual sexual intercourse. Neither party worked.

In spite of several violent episodes resulting in the hospitalization of Ms. Dombos, the couple married in early January 2004—just a little more than a month after their first meeting. By February 1, 2004, they had moved to Alamogordo, New Mexico, where they continued the lifestyle they had begun in Arizona.

{3} Ms. Dombos testified that there were several occasions in February when she would awaken to find Defendant tying her wrists and ankles. He would talk to her while she was tied up and tell her stories. While she was bound, Defendant would not attempt any sexual activity. He would then untie her. Afterward, he would usually try to force her to perform oral sex. She stated that he did this by pulling her hair to force her head down toward his lap and then running his finger around her lips in an attempt to open her mouth. Ms. Dombos testified that this series of events—her being tied up, followed by his attempt to force her to perform oral sex—"occurred at least four times in the three weeks" between February 1 and February 20.

{4} Sometime around February 18, 2004, Ms. Dombos developed a painful bladder infection, which led her to call a halt to the couple's daily, consensual sexual intercourse. On the evening of February 20, 2004, Ms. Dombos was awakened by Defendant's anally penetrating her. She testified that Defendant told her that because her infection prevented her from having vaginal sex and because she would not perform oral sex, "there's only one other way." Ms. Dombos testified that she screamed and begged Defendant to stop but that he would not. After Defendant finished and went to the bathroom, Ms. Dombos called 911, claiming that she could not breathe. Defendant came into the room and knocked the phone out of Ms. Dombos's hand. Ms. Dombos was taken to the hospital, and Defendant accompanied her. At the hospital, Ms. Dombos told an emergency room physician about the sexual assault, and Defendant was arrested.

{5} Sometime after February 21, 2004, Ms. Dombos discovered a videotape in her camcorder. She was surprised to find that the

video contained scenes of herself in situations she did not remember. The scenes were sexual, and according to Ms. Dombos, one showed an arm and hand of Defendant's sodomizing her with a carrot. She testified that she recognized Defendant's arm and sweater in the video. Ms. Dombos testified that she was so upset that she pushed the record button to tape over the video and that she vomited. At some point, she stopped recording over the tape and called the police, who came and took the tape from her.

{6} Defendant was indicted and convicted on ten separate counts as follows: one count of false imprisonment, contrary to NMSA 1978, § 30–4–3 (1963); two counts of CSP, contrary to NMSA 1978, § 30–9–11 (2003); one count of interference with communications, contrary to NMSA 1978, § 30–12–1(D) (1979); two counts of kidnapping, contrary to NMSA 1978, § 30–4–1(A)(4) (2003); two counts of attempted CSP resulting in physical injury, contrary to Section 30–9–11(D)(3), and NMSA 1978, § 30–28–1 (1963); and three counts of battery on a household member, contrary to NMSA 1978, § 30–3–15 (2001). The one count of false imprisonment and one count of CSP related to the anal intercourse that occurred on February 20, 2004; the other count of CSP was for the anal penetration with the carrot. The two counts of first-degree kidnapping were based on the acts of restraining Ms. Dombos in connection with the attempted oral sex, and the two counts of attempted CSP related to the acts of trying to force her to perform oral sex. The one count of interference with communications was for the act of knocking the phone out of Ms. Dombos's hand when she tried to call 911 after the anal intercourse. Finally, the three counts of battery on a household member were based on the physical abuse to which Ms. Dombos testified. All counts of Defendant's sentence were run consecutively for a total of fifty-nine and a half years of imprisonment.

{7} Additional facts will be presented as needed in addressing the issues on appeal.

## II. DISCUSSION

{8} Defendant makes eight claims of error: (1) the evidence supported at most a single count of first-degree kidnapping; (2) double jeopardy requires that the two convictions for attempted CSP be reduced to a single conviction; (3) the trial court erred in refusing to order a pre-trial psychiatric examination of Ms. Dombos; (4) the trial court erred in admitting the videotape; (5) the trial court erred in allowing amendment of the indictment during trial; (6) there was prosecutorial misconduct; (7) Defendant received ineffective assistance of counsel; and (8) there was cumulative error. We address Defendant's claims in turn.

## A. Kidnapping and False Imprisonment

### 1. Continuous Confinement Versus Multiple Confinements

■ {9} Defendant argues that kidnapping is a continuous offense and that the convictions for two counts of first-degree kidnapping and one count of false imprisonment should therefore not have been charged as three distinct criminal acts. He argues further that because Ms. Dombos testified that she did not feel free to leave Defendant at any point between February 1 and February 20, 2004, these three counts were based on unitary conduct, and should have merged into one count of kidnapping, "beginning at the point that Ms. Dombos became a captive, and ending when she was freed." Defendant claims that the separate charges subjected him to multiple punishments for the same offense, in violation of the Fifth Amendment to the United States Constitution. The State, however, argues that as to the kidnapping charges, there were at least two distinct confinements and that each began when Defendant tied up Ms. Dombos and ended when he stopped restraining her after attempting to force her to perform fellatio. The State also argues that the confinement on February 20, which culminated in anal intercourse, was separate and distinct from the other confinements. We review Defendant's double jeopardy challenge de novo. *See State v. Bernal*, 2006–NMSC–050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

■ {10} The Double Jeopardy Clause of the Fifth Amendment provides a defendant with two protections. First, it protects

a defendant who has been either acquitted or convicted of a crime from a subsequent prosecution for the same offense. *Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). Second, it protects against multiple punishments for the same offense in a single trial. *Id.* There are two types of multiple punishment cases: (1) "double-description" cases, those cases in which a single act results in multiple charges under different criminal statutes, and (2) "unit of prosecution" cases, those cases in which an individual is convicted of multiple violations of the same criminal statute. *Id.* at 8, 810 P.2d at 1228. Here, Defendant and the State agree that the kidnapping and false imprisonment charges raise only a unit of prosecution issue; therefore, the parties necessarily agree that false imprisonment is a lesser included offense of kidnapping. Both charges constitute the same offense for double jeopardy purposes. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Accordingly, we limit our discussion to a unit of prosecution analysis.

{11} The unit of prosecution analysis typically entails two steps. *See Bernal,* 2006–NMSC–050, ¶ 14, 140 N.M. 644, 146 P.3d 289. First, we review the statutory language to determine whether the intended unit of prosecution is clearly expressed in the statute. *Id.* We must apply the unit of prosecution expressed by the legislature. *See id.* A kidnapping begins with the initial restraint and "continues until the victim has been released from confinement." *State v. Hutchinson,* 99 N.M. 616, 624, 661 P.2d 1315, 1323 (1983). The second step is determining whether the defendant's acts are "separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Bernal,* 2006–NMSC–050, ¶ 14, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citation omitted).

{12} As for the first part of the inquiry, the unit of prosecution is clear: a kidnapping begins when the victim is initially confined and ends when the victim is released. This is the clearly stated unit of prosecution for a kidnapping. *See State v. McGuire,* 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990) (applying the *Hutchinson* definition in the context of a double jeopardy argument).

{13} Moving to the second part of the inquiry, we must determine if the confinement was continuous or if there were individual instances of confinement that were separated by sufficient indicia of distinctness such that separate convictions do not violate double jeopardy. In determining whether an act is distinct, we look to a variety of factors. *See Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991) (pointing to such factors: (1) temporal proximity of the acts, (2) location of the victim during each act, (3) existence of an intervening event, (4) sequencing of the acts, (5) the defendant's intent, and (6) the number of victims). The record in our case reveals that there was substantial evidence that at least two circumstances of kidnapping, as well as that of false imprisonment, were separated by days; intervening events that included consensual sex, drinking, and daily activities; and terminations of the intent to restrain. *See State v. McClendon,* 2001–NMSC–023, ¶ 5, 130 N.M. 551, 28 P.3d 1092 ("[O]ur primary concern . . . is to ensure that sufficient evidence exists to establish that each penetration is distinct from the others.") Thus, Defendant's two convictions for kidnapping and one conviction for false imprisonment do not violate double jeopardy.

**2. Jury Instructions**

{14} Defendant contends that the jury instructions were deficient because they did not set out findings to support the separate convictions and that reversal of one of the kidnapping convictions is therefore required in order to prevent double jeopardy. Although Defendant did not object to the jury instructions, he may raise a double jeopardy challenge on appeal, regardless of whether the issue was preserved. *See State v. Cook,* 2006–NMCA–110, ¶ 8, 140 N.M. 356, 142 P.3d 944.

{15} The indictment charged three counts of kidnapping: Counts 1, 4, and 6. Jury Instruction No. 8 related to Count 1 and was based on events that occurred on February 20. Jury Instruction Nos. 21 and 29 related to Counts 4 and 6 respectively, and both

related to events that occurred between February 1 and 19. All three kidnapping instructions were followed by an instruction regarding the lesser included offence of false imprisonment. The jury was given specific instructions to consider each crime in the indictment separately. During deliberations, the jury sent a note to the judge inquiring whether the two crimes of kidnapping charged in Counts 4 and 6 of the indictment concerned separate incidents. The trial court informed the jury that in order to convict on these two counts, "the jury would have to be convinced, beyond a reasonable doubt, that two different incidents occurred." The jury found Defendant guilty of kidnapping as charged in Counts 4 and 6. As to Count 1, the jury found Defendant guilty of the lesser included offense of false imprisonment.

{16} Defendant characterizes the kidnapping instructions on Counts 4 and 6 as carbon copy instructions because each covered the same time period and each alleged the same conduct. Then relying on *Cook*, 2006-NMCA-110, ¶ 19, 140 N.M. 356, 142 P.3d 944, *State v. Laguna*, 1999-NMCA-152, ¶ 40, 128 N.M. 345, 992 P.2d 896, and *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), Defendant maintains that reversal of one of his kidnapping convictions is necessary because under the instructions given, the jury could not distinguish between the kidnappings and therefore could have convicted him multiple times for a single course of misconduct. We disagree. In *Cook*, we remanded for dismissal of one of the two convictions for tampering with evidence because of the confused discussion about the counts and because of the absence of a factual basis for each charge contained in the written instructions, which could have resulted in the defendant's conviction of the same crime twice for a unitary course of conduct. 2006-NMCA-110, ¶ 19, 140 N.M. 356, 142 P.3d 944. In our case, as we explained above, there was a factual basis for each of Defendant's kidnapping convictions.

{17} *Laguna* is similarly unhelpful. In *Laguna*, the state charged the defendant, in two separate counts, with attempted criminal sexual contact of a minor (CSCM). 1999-NMCA-152, ¶ 37, 128 N.M. 345, 992 P.2d 896. At trial, the jury was given one instruction covering both counts, and the defendant was convicted of two counts of attempted CSCM. *Id.* ¶¶ 1, 37. The state argued that there were three separate attempts-two in the car before the victim began exiting the vehicle and then a final crotch grab, which occurred as the victim was exiting the vehicle. *Id.* ¶¶ 38–39. We held that the defendant's actions in the car before the final crotch grab constituted "a single ongoing attempt." *Id.* ¶ 38. We also held that even if the final crotch grab was a separate event, double jeopardy was violated because we could not ascertain with reasonable certainty the basis for the two convictions. *Id.* ¶ 39. The jury could have convicted the defendant of two counts based on the actions in the car, which we determined constituted one course of conduct. *See id.* ¶ 38. "Faced with one alternative that would violate double jeopardy," we reversed. *Id.* ¶ 39. Our case is distinguishable. There were two instructions on kidnapping, alleged to have occurred on or between February 1 and 19, 2004, one related to the charge in Count 4, and one related to the charge in Count 6. There was evidence to support two separate incidents, and the jury was specifically told, by the court in writing in response to a question, that in order to convict on both, the jury had to be convinced, beyond a reasonable doubt, that two different incidents occurred.

{18} We now turn to *Valentine*. In *Valentine*, the defendant was convicted of forty counts of sexual abuse and sentenced to forty consecutive life sentences. 395 F.3d at 628. After considering the defendant's habeas petition and based on the prosecution's failure to "distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial," a divided Sixth Circuit reduced the conviction to one count of child rape and one count of felonious sexual penetration of a minor. *Id.* at 628–29, 639. We note that the Valentine case contains dicta regarding double jeopardy and jury instructions, but the *Valentine* court's holding was based on the indictment, which contained multiple, undifferentiated charges and therefore violated the defendant's due process rights to notice and to protection from

the possibility of double jeopardy at a future trial. *See id.* at 632–36. Defendant does not argue that the indictment violated his due process rights. Accordingly, we are not convinced that the holding in *Valentine* applies to Defendant's claim. *Valentine* is inapplicable here.

{19} The evidence presented at trial provided a factual basis for the two kidnapping charges alleged to have occurred between February 1 and 19, 2004. Further, the direction from the trial court explained to the jury that it was required to find two different incidents in order to convict on both counts. Thus, there was no violation of double jeopardy on the kidnapping convictions.

**B. Double Jeopardy—Attempted CSP**

 {20} Defendant also claims that his due process and double jeopardy rights were violated when two identical instructions were submitted to the jury based on two counts of attempted CSP. Here, the State charged Defendant with two counts of attempted CSP, both of which were alleged to have occurred on or between February 1 and 19, 2004. Ms. Dombos testified that during that period of time, Defendant attempted to force her to perform fellatio "at least four times." She further testified that "it didn't happen at the same time" as the consensual intercourse but later, on different evenings, after Defendant "had ... been drinking all day." She had already testified that she and Defendant had engaged in consensual sex on a daily basis. Based on this evidence, the jury was given two identical instructions on attempted CSP and was given the standard unanimity instruction. Defendant was convicted on two of the four counts, which creates no double jeopardy problem here. *See State v. Altgilbers,* 109 N.M. 453, 469, 786 P.2d 680, 696 (Ct.App.1989) (stating that the standard unanimity instruction sufficed to prevent some jurors from convicting on one act and others on a different act). We presume the jurors followed the instructions. *See Norwest Bank New Mexico, N.A. v. Chrysler Corp.,* 1999–NMCA–070, ¶ 40, 127 N.M. 397, 981 P.2d 1215.

 {21} Relying again on *Valentine,* Defendant claims that due process and dou-

ble jeopardy were violated when multiple carbon copy counts of CSP were sent to the jury where the only evidence supporting the counts was based on the victim's testimony that the attempted CSP happened several times. *Valentine's* holding is based on due process violations contained in an indictment. 395 F.3d at 628. We will not address Defendant's due process arguments because Defendant did not preserve them below. *See State v. Nichols,* 2006–NMCA–017, ¶¶ 29–30, 139 N.M. 72, 128 P.3d 500 (declining to address on appeal a due process issue that was not preserved at trial). We will address double jeopardy challenges on appeal irrespective of whether the issue was preserved. *See Cook,* 2006–NMCA–110, ¶ 8, 140 N.M. 356, 142 P.3d 944.

{22} Defendant contends that Ms. Dombos did not demonstrate that Defendant's attempts to force fellatio were separate and distinct and that the evidence thus only supported one count. In determining whether an act is distinct, we look to the variety of factors listed in *Herron. See* 111 N.M. at 361, 805 P.2d at 628. Similar to the testimony provided by the victims in *State v. Martinez* and *State v. Salazar,* Ms. Dombos distinguished each attempt by time and circumstance, and she described intervening events. *See State v. Martinez,* 2007–NMCA–160, ¶ 17, 143 N.M. 96, 173 P.3d 18 (concluding that in spite of the fact that some incidents were instructed identically, double jeopardy was not violated because the victim described with particularity the acts upon which the defendant was convicted), *cert. denied,* 2007–NMCERT–011, 143 N.M. 156, 173 P.3d 763; *State v. Salazar,* 2006–NMCA–066, ¶¶ 30–31, 139 N.M. 603, 136 P.3d 1013 (stating that there was sufficient evidence from which the jury could have found two separate incidents of CSP).

{23} Citing to *Cook,* Defendant also contends that in the absence of a distinct factual basis for each charge, the jury could have convicted him twice for unitary conduct, thereby violating double jeopardy. 2006–NMCA–110, ¶ 19, 140 N.M. 356, 142 P.3d 944. We have determined that the conduct described by Ms. Dombos was not unitary because the incidents were separated by time

and intervening events. Consequently, we see no merit to this argument.

## C. Amended Indictment

{24} Partway through the trial, the State moved to amend the indictment. The original indictment charged that one count each of kidnapping, attempted CSP, and battery allegedly occurred "on or between February 9, 2004, and February 18, 2004," and that another set of charges for the same crimes allegedly occurred "on or about February 19, 2004." The State moved to change the dates on all of these charges to enlarge the time of occurrence to "on or between February 1 and February 19." Defendant objected to the amendments on the ground that he had prepared his defense based on the original dates alleged in the indictment. The trial court found that the changes would not prejudice Defendant and granted the State's motion.

{25} We disagree with Defendant's contention that the trial court erred when it permitted the State to amend the dates of some of the acts alleged in the indictment midway through trial. Rule 5–204(C) NMRA permits the trial court to amend the indictment to conform to the evidence at any time prior to the verdict. It also provides the following:

> No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant.

*Id.* At trial, Defendant asserted that he would be prejudiced by the amendment "simply by virtue of the fact that [he] had prepared [for trial] based on the information" in the prior indictment. The trial court pointed out that in the absence of any specific showing by Defendant of how he was harmed by the amendment, he had not established prejudice.

{26} On appeal, Defendant does not assert any specific claim of prejudice and states only that a trial court cannot amend an indictment "so as to include an entirely new charge." We agree with the State that changing the dates on the charges listed in the indictment does not create an entirely new charge and that Defendant has failed to describe any prejudice he may have suffered due to the amendment. This case is like *State v. Marquez,* 1998–NMCA–010, 124 N.M. 409, 951 P.2d 1070, in which an indictment was amended during the trial to conform to evidence indicating that the alleged acts occurred in 1993, rather than in 1992, as initially charged. *Id.* ¶¶ 18–19. We held there that the trial court did not err in granting the State's motion to amend. *Id.* ¶ 21. Although the defendant in *Marquez* claimed that the amendment prevented him from mounting an adequate defense, this Court noted that the defendant knew the nature of the charges against him, knew the identity of the alleged victim, and was aware of the mistake in the dates from the beginning of the trial. *Id.* In our case, Defendant knew the nature of the charges and knew the identity of the victim. He also knew that all the charges were alleged to have occurred during the period of time he and Ms. Dombos lived together in Alamogordo—that is, between February 1 and February 20, 2004. Nothing in Defendant's cross-examination of the witnesses at trial or in the presentation of his case relied upon the specific dates charged in the earlier indictment. In the absence of any specific claim of prejudice, we hold that the trial court did not err in allowing the amendment.

## D. Psychological Examination

{27} Defendant argues that the trial court erred in refusing to order a pre-trial psychological examination of Ms. Dombos. We disagree. The trial court held two hearings on Defendant's motions for the evaluation. In the first hearing, Defendant argued that Ms. Dombos was delusional and alcoholic, had suffered mental breakdowns, and was suffering from diabetic depression and that these mental disorders colored her ability to perceive or relate the events at issue in this case. The trial court ruled that it did not have jurisdiction to order a nonparty, such as Ms. Dombos, to undergo a psychological evaluation but that even if the court did have such authority, it would decline to exercise it

in this case, since Defendant presented no evidence to support his claim that such an evaluation was necessary to his defense. At the second hearing, Defendant made the same arguments and again offered no affidavits, witness testimony, or other evidence in support of this claim. Instead, Defendant's attorney asserted that Ms. Dombos had a pattern of becoming involved with people who abused her and that because there were so many incidents of alleged victimization, at least some of them must be a function of her imagination. Defense counsel listed a number of alleged incidents of victimization. However, Defendant offered no evidence that Ms. Dombos ever made these allegations or that if she did make them, they were false.

{28} The trial court concluded that it erred in the first hearing when it stated that it lacked jurisdiction to order Ms. Dombos to submit to a psychological evaluation. However, the court refused to order an evaluation of Ms. Dombos because of Defendant's continued failure to provide any evidence to support his need for the requested discovery. Here, the latter deprived the trial court of the ability to consider Defendant's request; the court was on firm ground either way.

{29} We review a trial court's order granting or denying a motion for discovery in a criminal case under an abuse of discretion standard. *State v. Ryan*, 2006-NMCA-044, ¶ 44, 139 N.M. 354, 132 P.3d 1040. Here, Defendant sought the evaluation in order to discover information that would test Ms. Dombos's ability to perceive and remember events. In so doing, Defendant was calling Ms. Dombos's credibility into question. *See State v. Taylor*, 103 N.M. 189, 194–95, 704 P.2d 443, 448–49 (Ct.App.1985) (indicating that questions regarding a witness's ability to perceive and remember relate to his credibility).

 {30} Where a defendant asks a court to order a psychological evaluation of a complaining witness in order to discover information that would allow the defendant to challenge that witness's credibility, the defendant must show a " 'compelling reason' " for the evaluation. *State v. Garcia*, 94 N.M. 583, 586, 613 P.2d 725, 728 (Ct.App.1980) (stating that the " 'compelling reason' " test

is appropriate when the psychological evaluation "is sought on the general ground of [a] mental condition affecting the victim's credibility as a witness"). A compelling reason exists when "the probative value of the evidence reasonably likely to be obtained from the examination outweighs the prejudicial effect of such evidence and the [complaining witness's] right of privacy." *State v. Ruiz*, 2001-NMCA-097, ¶ 40, 131 N.M. 241, 34 P.3d 630 (internal quotation marks and citation omitted).

{31} We need not decide whether we would have found a compelling reason had Defendant provided evidence in the form of affidavits, testimony, or documents indicating that Ms. Dombos had a pattern of making false complaints of sexual assault. Since Defendant provided no such evidence, he did not meet his burden of showing a reasonable likelihood that a psychological examination would have produced probative evidence relating to Ms. Dombos's credibility—much less that the probative evidence would have outweighed the prejudicial effect of the evidence and Ms. Dombos's privacy interests.

**E. Admission of the Altered Videotape**

 {32} Contrary to Defendant's argument, the trial court did not err in denying Defendant's motion to exclude the videotape showing a man's arm and hand holding a carrot and sodomizing Ms. Dombos with it. At trial, the videotape was introduced through the testimony of Lisa Delorem, the domestic violence investigator for the Otero County Sheriff's Department. Ms. Delorem did not state that she had any personal knowledge of the events on the video or that the video accurately depicted what it was purported to show. Later, when Ms. Dombos testified, she was able to identify herself on the tape, but she expressly stated that she had no memory of the events shown on the tape. Furthermore, she testified that she had not even watched the tape in its entirety, since when she started to watch it, she was so horrified that she quickly pressed the record button in order to tape over the footage. There was no one to testify as to the recording's accuracy. This type of evidence, however, can be admitted under the " 'silent

witness'" rule if a proper foundation is laid. *See State v. Henderson*, 100 N.M. 260, 261–62, 669 P.2d 736, 737–38 (Ct.App.1983). Here, there was no foundation laid, but Defendant did not object on foundational grounds; nor did he deny that it was he who belonged to the hand on the video. Instead, he argued that the videotape was more prejudicial than probative because Ms. Dombos had erased portions of the tape. Therefore, the only decision before this Court is whether the trial court erred under Rule 11–403 NMRA in admitting the video into evidence. We conclude that it did not.

{33} Under Rule 11–403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." The trial court is vested with a great deal of discretion in applying this rule. *See State v. Chamberlain*, 112 N.M. 723, 726, 819 P.2d 673, 676 (1991). "In determining whether the trial court has abused its discretion in applying Rule 11–403, the appellate court considers the probative value of the evidence[.]" *State v. Rojo*, 1999–NMSC–001, ¶ 48, 126 N.M. 438, 971 P.2d 829. Defendant claims that the deletion of certain material from the tape rendered it more prejudicial than probative, since had the rest of the tape been available, it would have been clear that Ms. Dombos consented to the sexual activity.

{34} We conclude that under an abuse of discretion standard that grants the trial court wide latitude in deciding whether to exclude evidence under Rule 11–403, the trial court did not err in finding that the probative value of the videotape outweighed any danger of unfair prejudice to Defendant. The probative value of the tape—which was the only available evidence of the sexual penetration with the carrot, since Ms. Dombos did not remember the incident—was extremely high. While the prejudice to Defendant was also high, evidence showing a defendant in the admitted commission of an act constituting a crime usually is highly prejudicial. Defendant claims that the deleted portions of the video would have shown that the act was consensual. Ms. Dombos, however, testified that she would not have consented to such an act, and she testified that she was drugged at the time of the penetration. Under this set of circumstances, we cannot say that the trial court abused its discretion in admitting the videotape.

## F. Prosecutorial Misconduct

{35} Defendant describes a number of examples of what he considers prosecutorial misconduct. During the closing argument, the State referred to Defendant as "vile," a "sexual deviant," and a "sick" person. The State also referred to Ms. Dombos's rights as a victim under Article II, Section 24, of the New Mexico Constitution—including the right to be treated with fairness and dignity in the criminal justice system and the right to be protected from the accused. Defendant challenges the negative comments and also argues that the prosecutor justified these comments about Defendant by contending that the victim's rights in Article II, Section 24, take precedence over the trial rights of criminal defendants. Defendant claims that the prosecutor's remarks about him and comments about the victim's rights warrant reversal.

{36} Defendant did not object to the prosecutor's remarks at trial; on appeal, Defendant urges us to review the matter for fundamental error. Our Court does review, in the absence of an objection, "certain categories of prosecutorial misconduct that compromise a defendant's right to a fair trial." *State v. Allen*, 2000–NMSC–002, ¶ 27, 128 N.M. 482, 994 P.2d 728. We believe that the prosecutor's statements that Defendant is "vile," a "sexual deviant," and "sick" improperly sought to depict Defendant as an evil person. *See State v. Ashley*, 1997–NMSC–049, ¶¶ 15–17, 124 N.M. 1, 946 P.2d 205 (holding that attacks on a defendant's character in an attempt to portray him as an evil person are improper). Although we discourage the use of such language, we cannot say that these comments fall within the categories of conduct that would deprive Defendant of a fair trial. *See State v. Armendariz*, 2006–NMCA–152, ¶ 24, 140 N.M. 712, 148 P.3d 798 (stating that references to the defendant as a "'rapist'" or "'burglar'" made by the prosecutor in closing do not fall within these cate-

gories), *cert. granted,* 2006–NMCERT–012, 141 N.M. 105, 151 P.3d 66.

{37} Defendant also argues that during closing, the prosecutor justified his negative comments about Defendant by contending that the victim's rights in Article II, Section 24, take precedence over the trial rights of criminal defendants. Prosecutors should not suggest that a victim's rights under Article II, Section 24, can outweigh a defendant's constitutional rights. However, under the circumstances of our case, the prosecutor's remark about these rights of Ms. Dombos did not constitute fundamental error. The closing comments focused on the instructions and elements of the crime and, taken in the context of the entire argument, did not suggest to the jury that the victim's rights trumped Defendant's rights.

{38} Pursuant to *State v. Franklin,* 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer,* 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985), Defendant also contends that the State deprived him of a fair trial by failing to disclose numerous items of exculpatory evidence, by claiming in the opening statement that the State would present testimony about Defendant's obtaining a restraining order against Ms. Dombos and then not providing the testimony, and by pursuing and then dismissing perjury charges. The State challenges several of Defendant's contentions. We need not evaluate each claim because even if the contentions are supported by the record, Defendant fails to explain how he preserved his claimed errors, fails to argue fundamental error, and, except for the broad statement that he was denied a fair trial, fails to explain how the State's actions prejudiced him. *See State v. Velasquez,* 99 N.M. 109, 112, 654 P.2d 562, 565 (Ct.App.1982) (stating that the defendant has the burden to show that prosecutorial misconduct was prejudicial). Accordingly, we find no error here.

## G. Ineffective Assistance of Counsel

{39} In order for Defendant to prevail on his ineffective assistance of counsel claim, he must first demonstrate error on the part of his attorney and then show that the error prejudiced his defense. *See Strickland*

*v. Washington,* 466 U.S. 668, 690–692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is presumed to have been effective, *id.* at 690, 104 S.Ct. 2052, and is ineffective only if the "representation falls below an objective standard of reasonableness." *Bernal,* 2006–NMSC–050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (alteration omitted) (internal quotation marks and citations omitted). "Indeed, if on appeal we can conceive of a reasonable trial tactic which would explain the counsel's performance, we will not find ineffective assistance." *State v. Roybal,* 2002–NMSC–027, ¶ 21, 132 N.M. 657, 54 P.3d 61. In order to show prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

{40} As acknowledged by Defendant, the record on appeal does not provide enough information to evaluate adequately his attorney's actions. When this occurs, New Mexico courts have expressed "a general preference that such claims be brought and resolved through habeas corpus proceedings." *Bernal,* 2006–NMSC–050, ¶ 33, 140 N.M. 644, 146 P.3d 289. Nevertheless, pursuant to *Franklin,* 78 N.M. at 129, 428 P.2d at 984, and *Boyer,* 103 N.M. at 658–60, 712 P.2d at 4–6, Defendant claims ineffective assistance on a number of grounds: (1) defense counsel failed to object to multiple errors at trial, (2) defense counsel went to trial without adequate preparation and failed to ask for a continuance, (3) defense counsel failed to proffer evidence at trial, (4) defense counsel failed to adequately cross-examine the witnesses, (5) defense counsel failed to investigate the case adequately, and (6) defense counsel made other, miscellaneous errors. Even though Defendant lists numerous errors under each category, he does not explain how he was prejudiced by his counsel's actions.

{41} Based on the above, we conclude that Defendant has not presented a prima facie case of ineffective assistance of counsel, since he has established neither ineffectiveness nor prejudice. However, Defendant may pursue habeas corpus proceedings should he be able

to provide evidence to support his claims. These claimed errors "may implicate tactical decisions made by counsel at or during trial[ ] and are best evaluated during habeas corpus proceedings[,] where trial counsel can provide testimony." *Bernal,* 2006–NMSC–050, ¶ 35, 140 N.M. 644, 146 P.3d 289.

## H. Defendant's Remaining Arguments

{42} Defendant raises a number of additional claims pursuant to *Franklin* and *Boyer.* He does not inform us of how these issues were preserved. Therefore, we decline to address these issues on appeal. *See Fitzgerald v. Open Hands,* 115 N.M. 210, 212, 848 P.2d 1137, 1139 (Ct.App.1993) (holding that no error is shown when a party fails to provide references to the transcript or the record where the issue was raised below), *abrogated on other grounds, Chavez v. Mountain States Constructors,* 1996–NMSC–070, ¶ 43, 122 N.M. 579, 929 P.2d 971.

## I. Cumulative Error

{43} Defendant asks this Court to reverse his convictions under the doctrine of cumulative error. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy,* 1998–NMSC–014, ¶ 29, 126 N.M. 132, 967 P.2d 807. This doctrine is strictly applied. *State v. Martin,* 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). It cannot be the basis for reversal when "the record as a whole demonstrates that a defendant received a fair trial." *Id.* While we agree that Defendant has shown that the prosecutor's statements about Defendant at closing were improper, these statements standing alone did not constitute fundamental error. Defendant is entitled to a fair trial, not a perfect trial. *See State v. Alvarez–Lopez,* 2004–NMSC–030, ¶ 58, 136 N.M. 309, 98 P.3d 699.

## III. CONCLUSION

{44} We affirm the trial court on all claims of error.

{45} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and RODERICK T. KENNEDY, Judge.