CORRECTION PAGE: Replace "SANTA FE COUNTY" with "LOS ALAMOS COUNTY" on line 7. Filed 8/25/10, VzBuFy

This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.                                                          NO. 28,395

**ANTHONY GARCIA,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY**
**Stephen Pfeffer, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

Defendant was convicted of five counts of first degree criminal sexual penetration of a minor under the age of thirteen (CSPM) in violation of NMSA 1978, Section 30-9-11(C)(1) (2003) (amended 2009), and ten counts of third degree criminal sexual contact of a minor under the age of thirteen (CSCM) in violation of NMSA 1978, Section 30-9-13(A) (2003). On appeal, Defendant argues that (1) prosecutorial misconduct resulting in a mistrial barred Defendant's convictions based on double jeopardy; (2) identical counts in the indictment and identical jury instructions violated double jeopardy and Defendant's right to due process; (3) there was insufficient evidence to convict Defendant of five counts of CSPM; (4) the district court erred in admitting certain hearsay testimony; (5) the district court erred in limiting Defendant's ability to cross-examine certain witnesses; (6) the district court erred in denying Defendant's motion to suppress his statements to police. We affirm Defendant's convictions.

**BACKGROUND**

Defendant's twelve-year-old stepdaughter (C. N.) told police that Defendant had been sexually molesting her since she was five or six years old. C. N. made this statement to police after being picked up as a runaway. At that time, the New Mexico Children, Youth and Families Department (CYFD) filed a Neglect/Abuse Petition against Defendant and C. N.'s mother. Defendant pleaded no contest to the allegations and was granted use immunity over his plea and statements in relation to

the allegations, provided that Defendant complied with the terms of the use immunity order. Approximately one year later, after several violations of the terms of the order, Defendant's use immunity was revoked, and Defendant was arrested on charges of CSPM and CSCM.

Defendant's first trial ended in a mistrial based on improper actions of the prosecution. A second trial was conducted, resulting in Defendant's conviction of five counts of CSPM and ten counts of CSCM. Defendant appeals his conviction, asserting the six points of error by the district court noted above. We address each of Defendant's arguments in turn.

**DISCUSSION**

**I. Double Jeopardy Violation Based on Prosecutorial Misconduct in First Trial**

Defendant argues that being tried a second time on the same charges violated his constitutional right to be free from double jeopardy. "We generally review double jeopardy claims de novo." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. "However, where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *Id.* In the case of double jeopardy based on prosecutorial misconduct, the factual issues surrounding that misconduct are necessarily intertwined with the double jeopardy analysis; therefore, "we review the

3

district court's fact determinations under a deferential substantial evidence standard of review." *State v. McClaugherty*, 2008-NMSC-044, ¶ 46, 144 N.M. 483, 188 P.3d 1234.

"The New Mexico Constitution, like its federal counterpart, protects any person from being twice put in jeopardy for the same offense." *State v. Breit*, 1996-NMSC-067, ¶ 8, 122 N.M. 655, 930 P.2d 792 (internal quotation marks and citation omitted). "The general rule is that when a defendant, on his or her own motion, obtains a mistrial, reprosecution is permitted. However, when a defendant's mistrial motion or request for reversal on appeal is necessitated by prosecutorial misconduct, reprosecution may be barred." *Id.* ¶ 14 (citations omitted)

In *Breit*, the New Mexico Supreme Court defined the conditions under which reprosecution is barred by prosecutorial misconduct. Our Supreme Court stated that retrial is barred where "improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, and if the official knows that the conduct is improper and prejudicial, and if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal." *Id.* ¶ 32. The Court defined "willful disregard" as a "conscious and purposeful decision by the prosecutor to dismiss any concern that his or her conduct may lead to a mistrial or reversal." *Id.* ¶ 34.

In the present case, the district court granted Defendant's motion for a mistrial but noted that the prosecutor's actions were negligent, not intentional, thus leaving open the possibility of Defendant being retried on the same charges. Defendant argues that the prosecutor knew that her conduct was improper and prejudicial and that the State either intended to provoke a mistrial or acted with willful disregard that such would occur and, therefore, Defendant's second trial violated his double jeopardy rights.

The prosecutor's misconduct in the first trial occurred during the questioning of C. N.'s therapist. Both the prosecution and the defense read sections of the therapist's report. The defense read sections of the report relating to the fact that C. N. had alternately accused Defendant and another man of molesting her. On redirect, the prosecution read from a section of the therapist's report in which the therapist appears to state that she believed C. N. was telling the truth when she accused Defendant. The therapist's report stated, "[C. N.] could no longer hold back the truth about [Defendant] sexually abusing her, tearfully saying, quote, if I hadn't told my mom, she wouldn't have told my dad." The prosecutor stated that she read that particular section in order to give a complete picture of who C. N. had accused of molesting her, particularly in light of the defense's readings. The prosecutor stated that she did not intend to give the impression that the therapist's assessment was that C. N. was telling the truth.

Our review of the record reveals that Defendant's first trial was fair, other than sole instance of misconduct involving the prosecutor's reading of the section of the report. The State's case appeared to be going well, and the State did not appear to have any reason to intentionally cause a mistrial. Additionally, we note that the section of the report read by the prosecutor was not substantially different from readings and statements previously offered by the defense. For example, during earlier cross-examination of the therapist, the defense made the following statement: "you told [C. N.] that because [Defendant] had abused her for all that time; that it was because of this and then lying about it. You told her that he lied about it to people, and then got mad when she tried to tell the truth; that because of all this, . . . she had to be removed from her home." This question by the defense could be interpreted to imply that the therapist believed C. N. to be telling the truth when C. N. accused Defendant; therefore, any prejudice created by the prosecutor's misconduct had likely already been introduced by the defense's own questioning.

In *Breit*, our Supreme Court stated that "[r]aising the bar of double jeopardy should be an exceedingly uncommon remedy" and that "double jeopardy will rarely bar reprosecution if the misconduct is an isolated instance during the course of an otherwise fair trial." 1996-NMSC-067, ¶¶ 33, 35. Applying this guidance, we conclude that Defendant's second trial was not barred on double jeopardy grounds.

**II.  Multiple, Identical CSPM Charges Did Not Violate Due Process and Double Jeopardy**

Defendant argues that his right to due process was violated because of a lack of specificity in the indictment.  Defendant also argues that he may have been subjected to double jeopardy because of lack of specificity in the jury instructions.  Defendant's arguments in this area reference only the CSPM charges and do not address the CSCM charges.  We address each of Defendant's arguments in turn.

"We review questions of constitutional law and constitutional rights, such as due process protections, de novo."  *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 27, 142 N.M. 248, 164 P.3d 947.

**A.  Multiple, Identical Charges in the Indictment**

Prior to trial, Defendant moved to dismiss the indictment, arguing that the CSPM counts in the indictment lacked sufficient specificity to provide Defendant with notice of the specific acts with which he was charged.  The indictment charged Defendant with six identical counts of CSPM.  Counts one through six state that:

> on, about or between the 1st day of September, 1998, and the 31st day of August, 2003, in Los Alamos County, New Mexico, the above-named Defendant did unlawfully and intentionally cause C. N., who was a child under thirteen years of age, to engage in sexual intercourse, cunnilingus, fellatio, anal intercourse or the penetration to any ext[e]nt and with any object of the genital or anal opening of another contrary to NMSA 1978, Section 30-9-11C(1).

7

In response to Defendant's motion, the district court ordered the State to produce a bill of particulars, more specifically delineating Defendant's acts that were the basis of the multiple counts in the indictment. After the State filed the bill of particulars, Defendant renewed his motion to dismiss and made a general objection that the bill did not narrow the time frame of the counts charged. The district court ruled that the bill of particulars provided adequate notice to the Defendant of the crimes with which he was charged.

On appeal, Defendant does not state his specific objections to the bill of particulars but rather argues that charging multiple, identical counts in the indictment "violated his due process right to be notified of the crime charged with reasonable certainty." In support of his argument, Defendant relies primarily on *State v. Dominguez*, 2008-NMCA-029, 143 N.M. 549, 178 P.3d 834 (filed 2007), *cert. denied*, 2008-NMCERT-002, 143 N.M. 665, 180 P.3d 672, and *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). Those cases are distinguishable from the circumstances in the present case.

In *Dominguez*, the defendant was charged with ten identical counts of CSCM. 2008-NMCA-029, ¶ 2. The State filed a bill of particulars attempting to delineate the charges. The bill of particulars described a few specific incidents; however, most of the counts were solely supported by an alleged course of undistinguished, ongoing conduct. *Id.* ¶ 4. The district court found that the bill of particulars was sufficient to

8

provide the defendant with "notice of the facts and circumstances as to five alleged incidents" and that "five of the undifferentiated counts of the indictment could be based on these five events." *Id.* The district court dismissed the remaining five counts. *Id.* In upholding the district court's decision, we stated that "the charges in the indictment provided sufficient notice and protected [the d]efendant from double jeopardy only insofar as the [s]tate was able to describe separate incidents in the bill of particulars." *Id.* ¶ 10.

Similarly, in *Valentine*, the Sixth Circuit held that multiple, undifferentiated charges in an indictment violated the defendant's right to due process. 395 F.3d at 631. The court found that the bill of particulars in *Valentine* was not sufficient to cure the defects in the indictment because "it merely restated the allegations and identified the family home as the location of all forty offenses." *Id.* at 629.

In contrast with *Dominguez* and *Valentine*, the bill of particulars that the State filed in the present case described the events and circumstances surrounding the charges in the indictment with sufficient particularity to support six counts of CSPM. The bill of particulars describes C. N. being penetrated by Defendant multiple times with his penis and his finger. The State alleges that these incidents happened at two separate residences and in multiple rooms at each residence. The State also describes two specific incidents, one in which Defendant penetrated C. N. with an object other than his finger or penis, and a second incident in which Defendant penetrated C. N.

9

while C. N. had a school friend sleeping in her bedroom. We agree with the district court that the indictment coupled with the bill of particulars in the present case was sufficient to give Defendant notice, with reasonable certainty, of the crimes with which he was charged.

**B.    Multiple, Identical Jury Instructions**

Defendant also argues that identical jury instructions for the multiple, identical counts with which he was charged may have subjected him to double jeopardy by allowing the jury to find him guilty of multiple counts based on the same alleged conduct. Defendant did not object to the jury instructions at the district court level; however, we note that Defendant "may raise a double jeopardy challenge on appeal, regardless of whether the issue was preserved." *State v. Dombos*, 2008-NMCA-035, ¶ 14, 143 N.M. 668, 180 P.3d 675, *cert. denied*, 2008-NMCERT-002, 143 N.M. 666, 180 P.3d 673.

As noted above, Defendant was charged with six identical counts of CSPM. The jury instructions related to these charges contained two identical instructions for digital sexual penetration associated with counts one and five in the indictment. The jury instructions also contained two identical instructions for sexual intercourse associated with counts two and six. The remaining two counts of CSPM were associated with jury instructions for the insertion of an object into C. N.'s vagina and cunnilingus. The jury found Defendant guilty of all counts except count four, relating

to cunnilingus. Each jury instruction clearly states the count in the indictment with which it is associated.

Defendant argues that "[n]othing in the jury instructions adequately distinguishes one 'carbon copy' CSPM count from another" making it impossible for Defendant to be protected from the danger of double jeopardy. We understand Defendant's argument to be that, because the two jury instructions regarding digital sexual penetration and the two instructions regarding sexual intercourse do not specifically state different circumstances for the alleged acts, the jury may have convicted Defendant multiple times for a single course of conduct. We disagree.

In support of his argument, Defendant again relies primarily on *Valentine* and *Dominguez*. We note, however, that the holdings in those cases discuss multiple identical counts charged in an indictment and do not address identical jury instructions; therefore, we do not find those cases instructive on this issue.

The circumstances in the present case are similar to those in *Dombos*, where we held that the defendant's right to be free of multiple punishments for a single course of conduct was not violated by two identical jury instructions on kidnaping. We held that the identical jury instruction did not violate double jeopardy because (1) the identical jury instructions referenced two separate counts in the indictment; (2) there was sufficient evidence presented at trial to support two separate incidents of kidnaping; and (3) the jury was specifically instructed by the court, in a written

11

response to a question, that "in order to convict on both [counts], the jury had to be convinced, beyond a reasonable doubt, that two different incidents occurred." *Dombos*, 2008-NMCA-035, ¶ 17.

Similarly, in the present case, each jury instruction referenced a separate count in the indictment. Additionally, the State presented evidence at trial to support multiple incidents of Defendant's alleged behavior in accordance with the bill of particulars submitted by the State prior to trial. At trial, C. N. testified that Defendant put his fingers inside of her on multiple occasions, in several different rooms, at two different residences in Los Alamos. C. N. also testified that Defendant put his penis inside of her on multiple occasions, in several different rooms, at two different residences in Los Alamos. Based on this testimony, we conclude that the jury could have found Defendant guilty of four separate instances of conduct involving CSPM.

Finally, as was the case in *Dombos*, the jury specifically asked the district court whether two charges could arise from the same event. *Id.* ¶ 15. The court's written response instructed the jury that "[t]wo charges cannot arise from the same alleged event." We presume that jurors follow the instructions they are given. *Id.* ¶ 20. Because each jury instruction referenced a separate count in the indictment and because evidence to support two separate incidents of digital sexual penetration and two separate incidents of sexual intercourse was presented at trial, we conclude that there was no violation of double jeopardy based on the jury instructions.

12

## III.    Hearsay Testimony

Defendant argues that the district court erred when it permitted testimony by the SANE nurse who examined C. N., because her testimony was inadmissible hearsay not covered by any exception.

The SANE nurse testified as to the SANE examination process and the physical findings that resulted from the examination of C. N. The SANE nurse also testified as to what C. N. had told the nurse regarding physical contact between C. N. and her abuser. Additionally, the nurse testified that during the examination, C. N. had identified Defendant as her abuser. The district court permitted the nurse's testimony, based on two separate exceptions to the hearsay rule. First, the court determined that the identity of the perpetrator was essential to diagnosis and treatment and was, therefore, admissible as an exception to the hearsay rule under Rule 11-803(D) NMRA. Second, the court stated that the testimony was not hearsay because it was offered to rebut an allegation of recent fabrication and was, therefore, admissible under Rule 11-801(D)(1)(b) NMRA.

After a thorough examination of the record, we conclude that we need not reach the issue of whether the district court erred in permitting the SANE nurse's testimony because, even if the admission of the testimony was an error, we conclude that the error was harmless and did not affect the outcome of the case.

13

An error is harmless if there is: "'(1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so minuscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the [s]tate's testimony.'" *State v. Duffy*, 1998-NMSC-014, ¶ 38, 126 N.M. 132, 967 P.2d 807 (quoting *State v. Moore*, 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980)).

In the present case, there was substantial evidence to support Defendant's conviction without reference to the SANE nurse's testimony. A video recording of Defendant's statement to police was played for the jury. In the statement, Defendant admits to penetrating C. N. with his finger and to rubbing his penis on C. N.'s vaginal area. Defendant admits to doing this approximately once a month for a period of several years in the multiple residences in which the family lived during that time. The jury heard testimony and received evidence that CYFD had determined that Defendant had sexually abused C. N. and based on this determination, CYFD had petitioned to have legal and physical custody of C. N. vested in CYFD. Additionally, the jury heard that Defendant had pleaded no contest to the CYFD allegations. C. N.'s mother and one of C. N.'s school friends both testified that they had witnessed Defendant sexually assaulting C. N. Finally, C. N. testified that Defendant had

14

sexually abused her by sexually penetrating her with his fingers and penis on multiple occasions.

We note that the SANE nurse merely restated what C. N. told the nurse during the SANE examination regarding Defendant's identity and his actions. The nurse did not make any statement as to C. N.'s credibility or whether the nurse thought C. N. was telling the truth. We conclude that the SANE nurse's testimony was merely cumulative of the volume of permissible evidence that was presented, including admissions of Defendant himself. *See State v. Martinez*, 99 N.M. 48, 52, 653 P.2d 879, 883 (Ct. App. 1982) (holding that "[t]he trial court's admission of the objectionable testimony may be sustained on the ground that statements of the alleged victim were cumulative of other evidence, including admissions of [the] defendant himself"). Additionally, we conclude that in comparison to the volume of permissible evidence presented, any improper evidence was so minuscule that it was unlikely to have contributed to Defendant's conviction.

Addressing the last prong of the harmless error test, we note that there was no substantial conflicting evidence to discredit the nurse's testimony. Testimony was presented that, for a period of time, C. N. had identified a man other than Defendant as her abuser; however, no evidence was presented to the effect that C. N.'s statements to the SANE nurse had been anything other than what was reported by the nurse in her testimony.

Based on the foregoing analysis, we conclude that, if the district court erred in permitting the testimony of the SANE nurse, that error was harmless.

**IV.  Sufficient Evidence Was Presented to Convict Defendant of Five Counts of CSPM**

Defendant argues that there was insufficient evidence to convict him of five counts of CSPM.  Defendant asserts that C. N.'s testimony is only specific as to Defendant penetrating her with his finger and that the rest of C. N.'s testimony is too general and unspecific to establish penetration beyond a reasonable doubt; therefore, Defendant asserts that three counts of CSPM must be reversed.  We disagree.

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.  "Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86.

As noted above, C. N. testified that Defendant had sexually abused her by putting "his fingers inside" her vagina.  C. N. testified that Defendant abused her in this manner multiple times, in several different rooms, in two separate trailer houses

16

in Los Alamos. C. N. also testified that Defendant had sexually abused her by trying to put his penis inside her vagina. She testified that Defendant abused her in this manner multiple times in the two trailer houses in Los Alamos. Additionally, C. N. testified regarding a specific incident in which Defendant inserted an object that was neither his finger nor his penis into her vagina. Finally, as we previously noted, Defendant's video recorded statement to police was played for the jury. In the video statement, Defendant admits to penetrating C. N. with his finger and to rubbing his penis on C. N.'s vaginal area. Defendant admits to doing this approximately once a month for a period of several years in the multiple residences in which the family lived during that time.

Based on our review of the record, we conclude that substantial evidence was presented at trial to support Defendant's conviction of five counts of CSPM

**V.      District Court Did Not Err in Limiting Cross-Examination of Victim**

Defendant argues that the district court violated Defendant's right to confront the witnesses against him by restricting Defendant's cross-examination of C. N.

"While the scope of cross-examination usually lies within the sound discretion of the district court, Confrontation Clause claims are issues of law that we review de novo." *State v. Gonzales*, 1999-NMSC-033, ¶ 22, 128 N.M. 44, 989 P.2d 419 (alteration omitted) (internal quotation marks and citation omitted). Nevertheless, the district court "retains wide latitude insofar as the Confrontation Clause is concerned

17

to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) (alteration omitted) (internal quotation marks and citation omitted).

"The Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish." *Id.* (internal quotation marks and citation omitted). A defendant's right of confrontation is not violated when the district court restricts cross-examination "to the facts and circumstances implicated by direct examination and to matters relating to the credibility of the witness." *State v. Smith*, 2001-NMSC-004, ¶ 23, 130 N.M. 117, 19 P.3d 254.

Defendant argues that the district court erred by not permitting him to cross-examine C. N. regarding the behavior of a third party that accompanied C. N. when she ran away from home. Defendant alleged that while C. N. and the third party were away from home the third party drank alcohol and may have been sexually active. Defendant did not allege that C. N. had engaged in similar behavior. The district court held that this line of questioning was based solely on speculation by Defendant and was precluded by Rule 11-403 NMRA because any probative value was substantially

18

outweighed by unfair prejudice to the State by imputing similar behavior to C. N., confusing the issues, and misleading the jury. The district court stated that Defendant could cross-examine C. N. regarding what she did during the period that she was away from home and where she stayed, etc. The district court noted that if Defendant intended to ask C. N. if she was sexually active during this period, Defendant must first file the appropriate motions under the rape shield law. Defendant did not file such a motion. Further, Defendant chose not to question C. N. regarding her actions while she was away from home.

On appeal, Defendant does not cite any evidence in the record to show that his desired cross-examination of C. N. was based on anything other than mere speculation and conjecture; therefore, we conclude that the district court was within its discretion to limit Defendant's cross-examination on these matters and that this limitation did not violate Defendant's right of confrontation.

## VI.    Denial of the Motion to Suppress Was Proper

At the time of his arrest, Defendant waived his right to an attorney and agreed to a video-recorded interview with police. On appeal, Defendant argues that his video-recorded statements were not knowingly and voluntarily made because he was under the influence of drugs and alcohol at the time the statements were made. Defendant further asserts that he was physically and mentally depleted during the interview due to the fact that he had lost his job on the previous day.

"We review de novo the voluntariness of confessions." *State v. Evans*, 2009-NMSC-027, ¶ 32, 146 N.M. 319, 210 P.3d 216. "[T]he prosecution bears the burden of proving by a preponderance of the evidence that a defendant's statement was voluntary." *Id.* ¶ 34.

The district court held a hearing on Defendant's motion to suppress. During this hearing, the court heard testimony from the interviewing officer and Defendant. Additionally, the district judge viewed the video recording of Defendant's interview with police.

The interviewing officer testified that prior to questioning, Defendant had been made aware of his rights, had agreed to provide an interview without an attorney present, and had signed a waiver to that effect. The officer also testified that at the time of the interview, Defendant did not appear to be under the influence of drugs or alcohol and that the Defendant had not expressed any concern that he did not understand the questions or the questioning process. Further, the officer testified that once Defendant requested an attorney, the interview was concluded and all questioning of the Defendant ceased.

The Defendant testified that on the day of his arrest, he was disoriented and depressed. Defendant stated that he had taken a number of different drugs and ingested a substantial amount of alcohol on that day. Defendant acknowledged his signature on the waiver form.

The district court held that in viewing Defendant's statements in light of the totality of the circumstances, a preponderance of the evidence showed that Defendant's statements were knowing and voluntary. Similarly, our own review of the record and viewing of the video reveals no indication that Defendant was impaired to the point of being unable to knowingly and voluntarily waive his right to counsel and make a statement to the police detectives. In the video, Defendant appears to be lucid and aware of the circumstances and does not appear to have symptoms of intoxication. The video also shows Defendant acknowledging that he understands his rights and stating that he is willing to waive those rights and talk to the detectives. The video shows Defendant signing a form to that effect. The interview is conducted in a civil manner. Defendant appears to understand the detectives' questions and to answer them coherently. The detectives do not threaten or coerce Defendant into making a statement.

Additionally, there is no indication in the record or in the video that the detectives performing the interrogation understood Defendant to be in a vulnerable mental state during the interview. "A confession is not involuntary solely because of a defendant's mental state." *Evans*, 2009-NMSC-027, ¶ 38 (alteration omitted (internal quotation marks and citation omitted). "Case law makes clear that when interrogators are unaware of, and therefore cannot exploit, the mental or emotional

21

vulnerabilities of a suspect, the crucial link between the confession and official action is missing." *Id.*

Based on a thorough review of the record, we conclude that the district court did not err by denying Defendant's motion to exclude Defendant's statement to the police.

**CONCLUSION**

For the reasons set forth above, we affirm the district court's order.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**