**Certiorari Denied, No. 31,853, August 18, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-107**

**Filing Date: June 30, 2009**

**Docket No. 27,939**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**MARK GARCIA,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}** Defendant Mark Garcia appeals his convictions of petty-misdemeanor battery and aggravated battery on Javier Jimenez. We hold that Defendant's convictions violate double jeopardy. We reject the remaining claims. We affirm the aggravated battery conviction. We reverse the petty-misdemeanor battery conviction and instruct the district court to vacate that conviction and the sentence accompanying that conviction.

1

**BACKGROUND**

**{2}**     Defendant and Jimenez were inmates in the Curry County, New Mexico, Detention Center.  Jimenez testified at trial as follows.  One day Defendant called Jimenez into his cell and began to question Jimenez about Jimenez's uncle, who was implicated in an unrelated criminal matter.  Defendant was angry and pushed Jimenez, and Jimenez pushed back. Defendant punched Jimenez and while Jimenez stepped back and swung at Defendant, something hit Jimenez from behind, and he fell to the floor.  Jimenez stated that he did not know who hit him from behind.  While Jimenez was on the floor, Defendant got on top of him and continued to punch him, and then Defendant got up and stomped on Jimenez's leg, shattering the leg.

**{3}**     Other testimony indicated that when detention officers arrived, they saw blood on Jimenez's hands, and Jimenez told the officers that he slipped and fell.  When looking around for anyone else in the cell, the officers found Defendant in a bunk with covers pulled over his head.  Defendant had a cut on his forehead and blood on his hands.  Defendant told an officer that he was taking a nap, that the cut on his forehead was from bumping his head earlier, and that the blood was from a scab he had removed.  An officer testified that the bunk in which Defendant was found belonged to an inmate named Ralph Flores.  When Jimenez was in the hospital, he stated that it was Defendant who injured him.  Detention officers testified that inmates may not like to tell what happened in these incidents until they are out of jail and the fear of retaliation has passed.

**{4}**     Defendant's only witness was Ralph Flores, who testified that no beating took place. He also testified that he did not see exactly what occurred, that he and Defendant had been cleaning the floor, and that while the floor was still wet, he heard a snap and saw another inmate lying on the floor.  Flores stated that the bunk in which Defendant was lying was assigned to Defendant.  Contrary to Flores's testimony, an officer testified that the bunk Defendant was in belonged to Flores.

**{5}**     Defendant was first charged with aggravated battery in violation of NMSA 1978, Section 30-3-5(C) (1969), a third degree felony.  Just before trial, he was charged by amended information, not only with aggravated battery, but also with battery contrary to NMSA 1978, Section 30-3-4 (1963), a petty misdemeanor.  Petty-misdemeanor battery is a lesser-included offense of aggravated battery.  *State v. Pettigrew*, 116 N.M. 135, 138, 860 P.2d 777, 780 (Ct. App. 1993).  The difference is that simple battery does not require an intent to injure.  *Id.*

**{6}**     At trial, Defendant moved for a directed verdict on the ground that the evidence did not support two separate battery counts and convictions; the State argued that these were separate battery counts that did not merge.  The district court denied Defendant's motion, ruling that "if there had been two counts charged of battery, that might be different and they may merge, but in this instance, there is a distinct, in my mind, separation between the

2

jumping on the leg and the initial shove or push so I'll deny the motion." Defendant was found guilty and convicted of aggravated battery and petty-misdemeanor battery.

**{7}** Defendant appeals the convictions on the grounds that (1) the convictions violate double jeopardy; (2) his attorney was ineffective for not objecting when the State added the misdemeanor battery charge just four days before trial; (3) insufficient evidence existed to convict Defendant of the charges; (4) the court erred in classifying the aggravated battery charge as a serious, violent offense; and (5) the court erred when it enhanced, pursuant to NMSA 1978, § 31-18-17 (2003), the misdemeanor battery.

## DISCUSSION

**Double Jeopardy**

**{8}** We review double jeopardy claims de novo. *State v. Dombos*, 2008-NMCA-035, ¶ 9, 143 N.M. 668, 180 P.3d 675, *cert. denied*, 2008-NMCERT-002, 143 N.M. 666, 180 P.3d 673. This is a unit-of-prosecution, double jeopardy issue. *See id.* ¶ 10 (stating that unit-of-prosecution cases are those in which a defendant is convicted of multiple violations of the same criminal statute). The question is whether Defendant could be convicted of two batteries, one simple and one aggravated, stemming from the circumstances in this case. The unit-of-prosecution analysis stems from *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). *See State v. Bernal*, 2006-NMSC-050, ¶¶ 13-18, 140 N.M. 644, 146 P.3d 289; *Dombos*, 2008-NMCA-035, ¶¶ 11-12. The unit-of-prosecution analysis is done in two steps. *State v. Boergadine*, 2005-NMCA-028, ¶ 15, 137 N.M. 92, 107 P.3d 532. First, we review the statutory language for guidance. *See State v. Barr*, 1999-NMCA-081, ¶ 13, 127 N.M. 504, 984 P.2d 185. If the statutory language is not clear, we must then determine whether the defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute. *Id.* ¶ 15.

**{9}** Defendant contends that his double jeopardy right was violated because the Legislature intended only one punishment for the entire course of conduct during the altercation and not for each discrete act. The State contends that two distinct circumstances point to the occurrence of two separate offenses. According to the State, one circumstance was that an unknown assailant's actions that knocked Jimenez to the ground constituted an independent intervening event. *See State v. Cooper*, 1997-NMSC-058, ¶¶ 6-7, 60-62, 124 N.M. 277, 949 P.2d 660 (determining that separate offenses occurred where an intervening struggle separated the defendant's first having hit the victim intending to knock him out and take his car from the defendant then causing the victim's death after the victim picked up a knife and the intervening struggle and escalated violence ensued). The second circumstance claimed by the State was the change in Defendant's intent: Defendant's initial intent to commit a petty-misdemeanor battery offense, which changed to his intent to commit a separate, aggravated-battery offense.

**{10}** It is not disputed that the only aspect of the unit-of-prosecution analysis with which we are concerned in this case is that of distinctness. We must determine, under what is often referred to as a *Herron* analysis, whether the offenses were separated by sufficient indicia

of distinctness, looking at (1) temporal proximity of the acts; (2) location of the victim during each act; (3) existence of an intervening act; (4) sequencing of the acts; (5) the defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims. *See Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991); *see also Bernal*, 2006-NMSC-050, ¶¶ 15-16 ("[W]e attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent."); *Barr*, 1999-NMCA-081, ¶¶ 15-16 (recognizing that acts separated by sufficient indicia of distinctness warrant separate punishments). We consider whether the acts of a defendant were "performed independently of the other acts in an entirely different manner, or whether such acts were of a different nature." *Boergadine*, 2005-NMCA-028, ¶ 21 (internal quotation marks and citation omitted).

**{11}** At the beginning of trial, the amended criminal information was read to the jury. Before it deliberated, the jury was instructed that each crime in the information should be considered separately. The battery charge in the amended information stated that Defendant unlawfully touched or applied force to Jimenez in a rude, insolent, or angry manner. The jury was instructed that to find Defendant guilty of battery, the State was required to prove that "[D]efendant touched or applied force to . . . Jimenez by hitting and/or punching" and that "[D]efendant acted in a rude, insolent[,] or angry manner."

**{12}** The aggravated battery charge in the amended information stated that Defendant touched or applied force to Jimenez intending to injure him and cause great bodily harm or acted in a way that would likely result in death or great bodily harm to Jimenez. The jury was instructed that to find Defendant guilty of "aggravated battery with great bodily harm," the State had to prove that "[D]efendant touched or applied force to . . . Jimenez by jumping on his leg," that "[D]efendant intended to injure . . . Jimenez," and that "[D]efendant caused great bodily harm to . . . Jimenez or acted in a way that would likely result in death or great bodily harm to . . . Jimenez." The jury was also instructed that great bodily harm meant "an injury to a person which results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body."

**{13}** The record on appeal in this case, although not as detailed as we would like, indicates that the acts of battery occurred close in time and sequence, in one location, with one victim. It appears that Defendant committed petty-misdemeanor battery demonstrated by pushing and punching while Jimenez was standing. Defendant's force and perhaps intent to injure increased after someone caused Jimenez to fall to the floor. It is unclear, however, how the prosecution intended to charge or charged Defendant's acts of hitting Jimenez in the face when Jimenez was on the floor. When Jimenez was on the floor, Defendant stomped on and shattered Jimenez's leg.

**{14}** There was no evidence that Defendant's intentions to commit a battery upon Jimenez were interrupted, altered, or changed by the event that caused Jimenez to be knocked to the floor. Likewise, there is no evidence that Defendant did not intend to injure or cause great bodily harm to Jimenez when Defendant initiated the confrontation. Finally, there is no

evidence that Jimenez's struggle with Defendant or his being knocked to the ground had any affect upon Defendant's state of mind during the confrontation. Defendant relies on relatively similar cases that have ruled that multiple punishments for violation of a single statute violated double jeopardy. *See State v. Demongey*, 2008-NMCA-066, ¶ 15, 144 N.M. 333, 187 P.3d 679 (holding that firing three shots separated by minutes and distance traveled was unitary conduct, where the shots were fired during one high-speed chase in an extreme attempt to escape from a pursuing officer), *cert. granted*, 2008-NMCERT-005, 144 N.M. 332, 187 P.3d 678; *State v. Handa*, 120 N.M. 38, 44, 897 P.2d 225, 231 (Ct. App. 1995) (holding that without proof that each shot was a separate and distinct act, multiple gunshots could not support separate counts of assault because there was no proof that the acts arose as a result of a separate, independent intent); *State v. Mares*, 112 N.M. 193, 200, 812 P.2d 1341, 1348 (Ct. App. 1991) (holding that the defendant could be found guilty of only one count of aggravated battery when he was charged with four counts involving pulling hair, beating, choking, and slapping the victim at various different locations "over one violent rampage with little time between offensive contacts").

**{15}** We are not persuaded that the interruption that caused Jimenez to fall to the ground can be considered a significant separating event as to Defendant's conduct. *See Mares*, 112 N.M. at 200, 812 P.2d at 1348 (noting the lack of detail in the record and determining that the interruption of the defendant's course of aggravated batteries by the arrival of a vehicle causing the defendant to move to another location where he continued the conduct was insufficient to separate the batteries into separate offenses with separate punishments); *see also Handa*, 120 N.M. at 44, 897 P.2d at 231 (discussing *Mares* and determining that the time between shots did not constitute an intervening event where it appeared that "there was little, if any, time between the first and subsequent shots"). While *Cooper*, 1997-NMSC-058, ¶¶ 60-62, concludes that a struggle that intervened between an aggravated battery and a more violent aggravated battery with three different weapons that caused the victim's death was enough to make the aggravated battery offenses distinct for punishment purposes, we are convinced that the *Mares* circumstances are more analogous to the case at hand.

**{16}** The State's second argument rested upon the notion that Defendant changed his intentions and that the *Herron* intent factor is controlling. *See Herron*, 111 N.M. at 361, 805 P.2d at 628. The State argues that Defendant's "intent to commit petty-misdemeanor battery is demonstrated by unlawfully touching Jimenez in a rude, insolent, or angry manner by pushing and hitting him after a conversation between the two[; whereas Defendant's] intent to commit a separate aggravated-battery offense is demonstrated by his act of jumping on Jimenez's leg while he was lying on the ground." We are not persuaded. From all appearances, all of Defendant's acts were very close in time, took place in one location, to one victim, in close sequence, and in an angry manner. The acts all constituted some form of battery, starting with lesser force and increasing in force. Indications are that Defendant moved first from pushing and punching while Jimenez was standing to hitting Jimenez in the face when he was on the floor. These actions indicate a continuous move from lesser to greater force and culminated when Defendant got up and stomped on Jimenez's leg. We are hard pressed to separate Defendant's continuous course of conduct into the two fragments advanced by the State. The evidence indicates Defendant was continually and sequentially

5

progressing from lesser force to more forceful harm over a very short period of time, all resulting without any apparent change in Defendant's state of mind.

**{17}** We conclude that the *Herron* factors lead to one result in this case. We hold that separate punishments for the petty-misdemeanor battery and aggravated battery convictions violate double jeopardy. Because it carries the lesser penalty, we reverse the conviction for petty-misdemeanor battery and instruct the district court to vacate that conviction and the punishment imposed for that conviction. The petty-misdemeanor battery conviction and punishment must be vacated. *See State v. Schackow*, 2006-NMCA-123, ¶ 25, 140 N.M. 506, 143 P.3d 745.

**Ineffective Assistance**

**{18}** We review ineffective assistance of counsel claims de novo. *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. At his arraignment, Defendant attacked the amended information charging petty-misdemeanor battery, asserting that it was the same charge as the aggravated battery. On appeal, Defendant asserts only that his counsel failed to object to the filing of the amended information because it was filed four days before trial. Defendant fails to present a prima facie case of ineffective assistance of counsel. His counsel objected in the district court. Even if his counsel did not specifically raise prejudice from the late filing, there exists no showing that Defendant was denied adequate notice and opportunity to defend or that he was prejudiced in any way. We therefore reject Defendant's argument of ineffective assistance of counsel.

**Sufficiency of the Evidence**

**{19}** The test for determining the sufficiency of the evidence "is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conviction. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{20}** In reviewing the sufficiency of the evidence, the appellate court resolves all disputed facts in favor of the guilty verdict, indulges all reasonable inferences in support of the guilty verdict, and disregards all evidence and inferences to the contrary. *Id.* In viewing the evidence in this manner, the appellate court determines whether any rational jury could have found that each element of the crime charged has been established beyond a reasonable doubt. *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994).

**{21}** Contrary evidence does not provide a basis for reversal because the jury was free to reject Defendant's version of the facts. *Rojo*, 1999-NMSC-001, ¶ 19. "A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the jury." *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. "An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Id.* at 130-31, 753 P.2d at 1318-19. "Jury instructions become the law of the

case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986).

**{22}** We reject Defendant's contention. Based on Jimenez's testimony and that of the officers, there was substantial evidence of a petty-misdemeanor battery by Defendant by the pushing and punching, and there was also substantial evidence of an aggravated battery by Defendant by jumping on Jimenez's leg and shattering it. *See Pettigrew*, 116 N.M. at 139, 860 P.2d at 781 (holding that evidence of the type of beating that could result in injuries to the victim constituted substantial evidence that supported an aggravated-battery conviction "when viewed, as it must be, in the light most favorable to the verdict").

**District Court's Reference**

**{23}** Relying on *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant asserts that the district court erred by referring to the crime of aggravated battery as a serious, violent offense. We reject this contention because Defendant does not cite to the record to show what the court stated and in what context the court stated it. We therefore will not consider the issue. *See Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."). Even were we to consider it, Defendant does not show how he was prejudiced. *See State v. Ross*, 2007-NMCA-126, ¶¶ 9-10, 142 N.M. 597, 168 P.3d 169 (indicating that "[i]n determining whether a judge has exceeded the bounds of acceptable conduct, . . . [t]he critical inquiry is whether the trial judge's behavior was so prejudicial that it denied the appellant[] a fair . . . trial").

**Habitual-Offender Enhancement**

**{24}** Defendant asserts, again relying on *Franklin* and *Boyer*, that the district court erred by enhancing his petty-misdemeanor battery conviction. We reject this contention because the court did not enhance Defendant's petty-misdemeanor offense. Further, even if the offense were enhanced by the district court, the issue is moot because of this Court's reversal of the petty-misdemeanor conviction.

**CONCLUSION**

**{25}** Based on a violation of double jeopardy, we reverse and instruct the district court to vacate the petty-misdemeanor battery conviction and sentence. We otherwise affirm the district court's judgment and sentence.

**{26}   IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**


_____
**TIMOTHY L. GARCIA, Judge**


**Topic Index for *State v. Mark Garcia*, No. 27,939**

| | |
|---|---|
| **AE** | **APPEAL & ERROR** |
| AE-RM | Remand |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-AG | Aggravating or Mitigating Circumstances |
| CL-BA | Battery |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-EA | Effective Assistance of Counsel |
| CA-HC | Habitual Criminal |
| CA-SE | Substantial or Sufficient Evidence |