This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38661**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHARLES JACKSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}**     Defendant Charles Jackson was convicted of both aggravated battery against a household member and battery against a household member after he physically attacked his then-wife (Victim) while they were dropping their children off at elementary school.1 On appeal, Defendant argues that (1) his convictions violate double jeopardy;

---

1Defendant was also charged with aggravated battery against a household member (deadly weapon), contrary to NMSA 1978, Section 30-3-16(C)(2) (2018) (Count 2), on the theory that Defendant ran over

(2) there is insufficient evidence to support his conviction for aggravated battery against a household member; (3) the district court improperly qualified an expert witness; and (4) he received ineffective assistance of counsel at trial. Because the conduct forming the basis of both charges occurred during the course of a single, continuous eight-second attack, we conclude the conduct underlying both convictions was unitary, and therefore, Defendant's battery conviction must be vacated on double jeopardy grounds. We otherwise affirm.

**BACKGROUND**

**{2}**     Defendant, Victim, and their two children arrived together at the children's school for morning drop-off. Security camera footage showed their vehicle pulling into the drop-off area. Defendant got out of the passenger side of the vehicle and helped the children out from the back seat. Victim got out of the driver's side and walked around the front of the vehicle toward the curb as the children left the camera's field of view. Victim stood at the curb and gestured briefly with her arm. Seconds later, Defendant grabbed Victim and shoved her backward onto the hood of the vehicle and then onto the ground. The video shows Defendant going to the ground with Victim and throwing a series of punches before getting up, walking toward the driver's side of the vehicle, and then out of the field of view in the direction of the school. The entire altercation was continuous and lasted approximately eight seconds. Afterward, Victim lay motionless on the ground with her head on the curb and the rest of her body in the road, directly in front of the vehicle. Defendant eventually got into the vehicle and drove off at a high rate of speed, leaving Victim on the ground.

**{3}**     Several witnesses testified at trial. One witness noticed that Defendant's "knuckles were beaten up, they were bloody." Others who stopped to aid Victim recounted seeing Victim on the ground, bleeding, moving "in and out of . . . consciousness," and "not sure where she was or what had happened." One witness talked with Victim to "keep her awake, just to make sure she wasn't going to pass out and not wake up."

**{4}**     A police officer arrived and observed that Victim's face was swollen, she had marks on her neck, and she seemed very disoriented. Victim was taken by ambulance to the hospital. Afterward, the officer went into the school's office to talk with Defendant's mother. Defendant's mother called Defendant, who said he "beat the shit out of [Victim]."

**{5}**     When Victim arrived at the hospital, the emergency room physician, Dr. Kennedy, observed that Victim had swelling, redness, and bruising on her left cheek. On her neck, Victim had red streaks consistent with strangulation, as well as petechiae, which are "consistent with underlying small vascular injury." Dr. Kennedy also testified that Victim complained of pain in her head, face, stomach, left foot, and neck.

---

Victim's foot, as well as violating a protective order, contrary to NMSA 1978, Section 40-13-6(H) (2013) (Count 4). Defendant was acquitted on Count 2 and does not appeal his conviction on Count 4.

**{6}** Defendant was arrested and charged with aggravated battery against a household member (strangulation or suffocation), contrary to Section 30-3-16(C)(3) (Count 1), and battery against a household member (great bodily harm), contrary to NMSA 1978, Section 30-3-15(A) (2008) (Count 3). During trial, Defendant testified and claimed that Victim "kind of lunged at me." Defendant stated that he "pushed her up against the truck and then . . . grabbed her from the back of her head and . . . threw her to the ground." Once Victim was on the ground, Defendant claimed he told her to stop and punched the ground a couple of times past her body before she screamed at him to hit her, and he did. Defendant denied that he strangled Victim or placed his hands on her throat. The jury convicted Defendant on both counts.

**{7}** Following trial, Defendant moved to merge his convictions on Counts 1 and 3, claiming they violated double jeopardy principles. The district court denied the motion, ruling that Defendant had committed two separate and distinct acts for which he could be punished separately. Defendant timely appealed to this Court.

**DISCUSSION**

**I.** **Defendant's Convictions for Battery Against a Household Member and Aggravated Battery Against a Household Member Violate Double Jeopardy**

**{8}** Both parties characterize the double jeopardy issue in this case as a double description claim, which requires us to examine whether Defendant was punished more than once for the same conduct under different criminal statutes. *See State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. *But see State v. Garcia*, 2009-NMCA-107, ¶ 8, 147 N.M. 150, 217 P.3d 1048 (evaluating the defendant's convictions for two batteries, one simple under NMSA 1978, Section 30-3-4 (1963), and one aggravated under NMSA 1978, Section 30-3-5(C) (1969), using a unit-of-prosecution analysis). We review Defendant's double description claims de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**{9}** To evaluate a double description claim, we apply the two-part test identified in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223, where we first examine "whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges." *Bernal*, 2006-NMSC-050, ¶ 9. "If it is, we proceed to ask whether the Legislature intended to create separately punishable offenses." *State v. Reed*, 2022-NMCA-025, ¶ 8, 510 P.3d 1261 (alteration, internal quotation marks, and citation omitted). In this case, the State concedes that the Legislature did not intend multiple punishments under the second step of the *Swafford* analysis for the charges at issue because battery against a household member is a lesser included offense of aggravated battery against a household member. Although we are not bound by the State's concession, we agree with it here. *See State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130. Accordingly, the double jeopardy issue before us turns on whether Defendant's conduct was unitary. As we explain below, we conclude that it was.

**{10}** When considering whether conduct is unitary, "we consider whether Defendant's acts are separated by sufficient 'indicia of distinctness.'" *See State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61. "Sufficient indicia of distinctness are present when the illegal acts are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227 (alteration, internal quotation marks, and citation omitted). "If these considerations do not suffice to make the determination, resort must be had to the quality and nature of the acts or to the objects and results involved." *Id.* (internal quotation marks and citation omitted). Additionally, we consider whether "one crime is completed before another is committed, or [if] the force used to commit a crime is separate from the force used to commit another crime." *Id.*

**{11}** Defendant argues that he committed one continuous act for which he should be punished only once. The State argues, and the district court concluded, that Defendant's conduct was distinguishable and can be separated into two offenses. For the reasons that follow, we agree with Defendant that the continuous course of conduct at issue here cannot be separated into the two parts advanced by the State.

**{12}** Turning to the factors that guide our analysis, the State acknowledges that no time or space separated Defendant's acts—the attack unfolded in a rapid, continuous sequence and ended in a matter of seconds, all in a single location. Nevertheless, the State maintains that Defendant's act of choking Victim (the conduct the State relied on to support the aggravated battery charge in Count 1) and Defendant's act of hitting Victim (the conduct the State relied on to support the battery charge in Count 3) were separated by an intervening event—Defendant's act of throwing Victim to the ground. But unlike other cases in which we have concluded that an intervening event separated the defendant's conduct, here there was no demonstrable break in the incident that can be said to have separated the attack into distinct parts. *See, e.g.*, *State v. Phillips*, 2021-NMCA-062, ¶ 14, 499 P.3d 648 (holding that an intervening event occurred when the defendant left the room and the victims locked the door, forcing the defendant to break into the room to continue the assault), *cert granted* (S-1-SC-38910, Nov. 1, 2021); *State v. Arvizo*, 2021-NMCA-055, ¶ 55, 499 P.3d 1221 (holding that the victim's "physical blocking and distancing herself from [the d]efendant, along with the conversation that followed, constitute intervening events" between the defendant's attempts to kiss her); *State v. Stewart*, 2005-NMCA-126, ¶ 19, 138 N.M. 500, 122 P.3d 1269 (concluding that an assault on another victim constituted an intervening event that separated the defendant's batteries of the victim); *State v. Cooper*, 1997-NMSC-058, ¶ 61, 124 N.M. 277, 949 P.2d 660 (holding a struggle between the initial battery and the acts that eventually caused the victim's death constituted an intervening event). The video does not show any pause or break between Defendant pushing Victim back onto the hood of the vehicle and Victim falling to the ground, as the State suggests in its brief. Victim slid to the ground immediately after falling backward onto the hood of the vehicle in one continuous sequence.

**{13}** The State also argues that the "quality and nature" and "objects and results" of Defendant's attack support a conclusion that the conduct was not unitary. According to

the State, there are qualitative distinctions in Defendant's acts of choking and hitting based on "different placements of Defendant's hands, different actions (squeezing versus striking)," different intentions (by choking Victim, Defendant "sought to cut off her airway," but in punching her, "he meant to inflict pain"), and different injuries resulting from the harm. We are not persuaded. In factually similar cases, this Court has concluded that different methods of battering a victim during a continuous attack are "not sufficient . . . to conclude that the offensive contacts were separate acts." *State v. Mares*, 1991-NMCA-052, ¶ 27, 112 N.M. 193, 812 P.2d 1341; *see id.* (holding that the defendant's acts of choking the victim and then hitting her in the face during the course of an attack that occurred in and around the defendant's car were insufficient to support more than one conviction for aggravated battery); *see also Garcia*, 2009-NMCA-107, ¶¶ 11-17 (holding that the defendant's acts of pushing and punching the victim while standing, hitting the victim in the face while on the floor, and stomping on and shattering the victim's leg while the victim was on the floor were part of a continuous course of conduct that constituted one aggravated battery); *Phillips*, 2021-NMCA-062, ¶ 10 (noting that "the aggravated battery statute d[oes] not separately punish each act of unlawful touching occurring during a continuous attack unless the acts are sufficiently distinct").

**{14}**     The State urges us not to rely on these cases because they are unit-of-prosecution cases involving multiple charges under the same criminal statute. Notwithstanding this distinction, the analytical framework for evaluating unitary conduct is similar and the same reasoning applies here, in the context of multiple batteries that vary only by degree. As with *Mares* and *Garcia*, all of Defendant's acts were close in time, took place in one location, against one victim, and all constituted some form of battery. That Defendant employed various methods to batter Victim is not sufficient to parse out his continuous course of conduct into separate acts. Consequently, we hold that separate punishments for battery and aggravated battery against a household member violate double jeopardy. Because the conviction for battery against a household member carries the lesser penalty, it must be vacated. *See Garcia*, 2009-NMCA-107, ¶ 17. We reverse as to Count 3 and remand to the district court with instructions to vacate the conviction and resentence Defendant.

## II.     Sufficient Evidence Supports Defendant's Conviction for Aggravated Battery Against a Household Member

**{15}**     Defendant argues that the evidence introduced at trial was insufficient to support his conviction for aggravated battery against a household member by strangulation or suffocation. We review challenges to the sufficiency of the evidence to determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (emphasis, internal quotation marks, and citation omitted).

**{16}**     For the charge of aggravated battery against a household member, the State was required to prove beyond a reasonable doubt that (1) Defendant strangled or

suffocated Victim, and (2) by strangling or suffocating Victim, Defendant impeded the normal breathing or blood circulation of Victim. Defendant argues that he did not strangle or suffocate Victim and no evidence at trial established otherwise. Defendant specifically argues that the video did not establish strangulation, Victim did not testify to having been strangled, and the emergency room doctor who treated Victim opined only that Victim's injuries were "consistent with" strangulation. Defendant concludes that "[a]bsent additional evidence, such as the testimony of [Victim] or another witness to the incident, the evidence is insufficient to prove beyond a reasonable doubt that [Defendant] strangled [Victim]."

**{17}** We reject Defendant's arguments. The State presented photographs of linear marks on Victim's neck, and the jury heard testimony from several witnesses confirming the existence of those marks immediately after the attack. For example, the officer who arrived at the school testified to seeing marks on Victim's neck, and Victim herself testified about the marks and stated that she lost consciousness during the attack. Dr. Kennedy, the doctor who treated Victim, testified that Victim complained about pain in her neck when she arrived at the emergency room, and that during her examination of victim, she observed "[e]rythematous lines [on her neck] consistent with strangulation." Viewing this evidence in the light most favorable to the jury's verdict, we conclude this was sufficient evidence from which a rational jury could reasonably infer that Defendant strangled Victim during the attack.

### III. Dr. Kennedy Was Properly Qualified as an Expert Witness

**{18}** Defendant argues that Dr. Kennedy, the emergency room physician who treated Victim, should not have been qualified as an expert witness because she was a medical resident at the time she treated Victim and "was still completing her medical training." We review the admission of expert testimony for abuse of discretion. *See State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192.

**{19}** Rule 11-702 NMRA provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Dr. Kennedy testified that at the time she treated Victim, she had been working as a doctor in an emergency room full time for two years and two months. Dr. Kennedy saw sixty to seventy patients a week, she had been trained in treating victims of domestic violence, and she was the chief resident, which means she taught other residents, interns, and medical students. Given Dr. Kennedy's training and experience, it was not against the logic and effect of the facts and circumstances of the case for the district court to qualify her as an expert. We conclude the district court did not abuse its discretion in qualifying Dr. Kennedy as an expert witness.

### IV. Defendant Has Not Made a Prima Facie Case that His Counsel was Ineffective

**{20}** Finally, Defendant argues that he received ineffective assistance of counsel at trial. He claims that his counsel "should have obtained an expert to opine about the injuries in this case," because "[t]he video did not clearly show any strangulation and [Victim] did *not* testify that she had been strangled. Therefore, this case came down solely to the medical evidence."

**{21}** "We review claims of ineffective assistance of counsel de novo." *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Astorga*, 2015-NMSC-007, ¶ 17, 343 P.3d 1245 (internal quotation marks and citation omitted). Regarding the first element, defense counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* ¶ 18 (internal quotation marks and citation omitted). As to the second element, to prevail, "[a] defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bernal*, 2006-NMSC-050, ¶ 32 (internal quotation marks and citation omitted). The burden is on Defendant to establish each element of a claim of ineffective assistance of counsel. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61; *see also State v. Trujillo*, 2002-NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814 ("Assistance of counsel is presumed effective unless the defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." (internal quotation marks and citation omitted)). "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *State v. Hernandez*, 1993-NMSC-007, ¶ 27, 115 N.M. 6, 846 P.2d 312 (alteration, internal quotation marks, and citation omitted).

**{22}** Here, Defendant has not established prejudice resulting from his counsel's failure to call a medical expert. Defendant's claim of prejudice is simply that the defense needed to hire its own expert to rebut Dr. Kennedy's testimony, and counsel's failure to do so resulted in Defendant's conviction for aggravated battery. At this juncture, however, the record does not demonstrate what mitigating testimony, if any, a defense expert would have provided at trial. As a result, we have no basis to conclude there is a reasonable probability that the result would have been different had an expert been retained on Defendant's behalf. Accordingly, we conclude that Defendant has failed to establish a prima facie case of ineffective assistance of counsel on appeal.

**{23}** Even so, Defendant "is free to pursue habeas corpus proceedings where he may actually develop the record with respect to these issues." *State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517; *see also State v. Crocco,* 2014-NMSC-016, ¶ 14, 327 P.3d 1068 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{24}** We reverse Defendant's conviction for battery against a household member and remand with instructions to vacate that conviction and resentence Defendant. We affirm on all other issues raised.

**{25} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**