This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41712**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**SHELBY ALEXANDRA DELGADO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Chief Judge.**

**{1}** Defendant appeals her convictions for false imprisonment contrary to NMSA 1978, Section 30-4-3 (1963) and battery against a household member contrary to NMSA 1978, Section 30-3-15 (2008). Defendant raises two arguments on appeal: (1) the conduct resulting in these convictions was unitary and therefore violates double jeopardy; and (2) there was insufficient evidence to support her false imprisonment conviction. After due consideration, we remain unpersuaded by the claims of error. We therefore affirm each of Defendant's convictions.

## BACKGROUND

**{2}** Victim was previously in a relationship with Defendant. Victim drove to Defendant's house to drop off some of Defendant's personal belongings. When Victim arrived, he texted Defendant to let her know he was there. Defendant came outside and asked Victim to help her fix her car. Victim refused to help Defendant. Defendant became upset, forced her way into Victim's car, and sat on Victim, who was seated on the driver's seat of his car.

**{3}** Victim told Defendant to "get out" and that Victim was leaving. A struggle ensued during which Defendant scratched Victim on the face and head. Victim dragged himself to the passenger side door, far enough to keep Defendant from scratching his face again and in an effort to get out of the car. During this struggle, Victim's head became positioned near the passenger floorboard. At this time, Victim focused on keeping Defendant from scratching his face. Defendant straddled her legs over the center console of the car, placing one foot on Victim's neck, and her other knee on his back. Victim testified he could not breathe while Defendant's foot was on his neck. Victim continued to try to get out of the car but Defendant "pinn[ed] him down" for a few minutes. Defendant continued holding Victim, telling him "ya muerte" (die already) while scratching and biting him. Victim told Defendant to "stop," but she continued holding him down for about ten minutes before Defendant eventually got off Victim and he got out of the car through the passenger door. Once Defendant got out of the car, Victim walked around the car, and as Defendant was no longer in the car, got in the driver's seat and left. Subsequently, law enforcement was alerted.

**{4}** When law enforcement asked Defendant about the incident, she made light of having Victim "in a lock," laughing and saying, "I can't believe he's so weak." Defendant told law enforcement, "lo tenía sometido" (she had the Victim submitted). A jury convicted Defendant of battery against a household member and false imprisonment. This appeal followed.

## DISCUSSION

### I. Defendant's Convictions for Battery Against a Household Member and False Imprisonment Do Not Violate Double Jeopardy

**{5}** Defendant argues that her convictions for battery against a household member and false imprisonment violate double jeopardy because her convictions "arise from the same conduct but under different statutes." Defendant contends her actions were one continuous act and as such, she should only be punished once. For the reasons that follow, we conclude the conduct supporting each offense was separate and distinct and affirm both convictions.

**{6}** "Double jeopardy protects against multiple punishments for the same offense." *State v. Jackson*, 2020-NMCA-034, ¶ 27, 468 P.3d 901; *see State v. Phillips*, 2024-NMSC-009, ¶ 9, 548 P.3d 51; *State v. Swafford*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810

P.2d 1223. This case involves a double description claim, which occurs when "a single act results in multiple charges under different criminal statutes." *Jackson*, 2020-NMCA-034, ¶ 27 (internal quotation marks and citation omitted). We review questions of double jeopardy de novo. *See State v. Porter*, 2020-NMSC-020, ¶ 11, 476 P.3d 1201.

**{7}**     We review double description claims using the two-part analysis set forth in *Swafford*, 1991-NMSC-043, ¶ 25. We first ask "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *Id.*; *Phillips*, 2024-NMSC-009, ¶ 37. "A defendant's conduct is unitary if the acts are not separated by sufficient indicia of distinctness." *Phillips*, 2024-NMSC-009, ¶ 38 (internal quotation marks and citation omitted). Only if the defendant's conduct is unitary will we move to the second part of the analysis, which is to determine whether the Legislature intended to punish the two crimes in the statutes at issue separately. *See Swafford*, 1991-NMSC-043, ¶ 25.

**{8}**     When determining whether a defendant's conduct is unitary or distinct, we consider the six *Herron* factors: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of [any] intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims." *Phillips*, 2024-NMSC-009, ¶ 12 (citing *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624). These factors are guiding principles and none are individually dispositive. *Id.* ¶ 13 ("We continue to hold that no *Herron* factor is dispositive, but instead that all factors should be considered together in light of the facts and circumstances of each case.").

**{9}**     Our post-*Herron* case law has elaborated on the factors of distinctness, and we additionally consider the quality and nature of the acts and determine whether the force used for one crime is separate from the force used for another crime. *See Phillips*, 2024-NMSC-009, ¶ 38 (stating "[u]nitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." (internal quotation marks and citation omitted)); *State v. Saiz*, 2008-NMSC-048, ¶ 34, 144 N.M. 663, 191 P.3d 521 (holding that there was not a double jeopardy violation when the evidence of defendant's intent to kidnap victim for the purpose of sexual assault was separate from defendant's intent to murder victim), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783). "Irrespective of which of the *Herron* factors or other considerations is deemed controlling in a given case, our case law makes clear that 'if it reasonably can be said that the conduct is unitary, then we must conclude that the conduct is unitary.'" *Sandoval*, 2025-NMCA-002, ¶ 34, 561 P.3d 1102 (quoting *Phillips*, 2024-NMSC-009, ¶ 38).

**{10}**     We begin by looking at the offense of false imprisonment. In order for the jury to have found Defendant guilty of false imprisonment, the jury was instructed that it had to find, in relevant part, that Defendant: (1) "restrained or confined [Victim] against his will"; and (2) "knew that she had no authority to restrain or confine [Victim]." This instruction tracks the uniform jury instruction containing the statutory elements for false

imprisonment. *See* UJI 14-401 NMRA; § 30-4-3. "The restraint [involved] need only be present for a brief time." *State v. Muise*, 1985-NMCA-090, ¶ 22, 103 N.M. 382, 707 P.2d 1192.

**{11}** "The crime of [false imprisonment] is complete when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime." *State v. Dominguez*, 2014-NMCA-064, ¶ 10, 327 P.3d 1092 (recognizing this principle in relation to the offense of kidnapping)). "[T]he key to finding the restraint element . . . is to determine the point at which the physical association between the defendant and the victim was no longer voluntary." *State v. Jacobs*, 2000-NMSC-026, ¶ 24, 129 N.M. 448, 10 P.3d 127, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 72, 478 P.3d 880.

**{12}** The State made clear in its closing argument that there were several "point[s] at which the physical association between the [D]efendant and the [V]ictim was no longer voluntary." *See id.* Defendant restrained Victim by pinning him down, holding him in a lock, and confining him against his will. Victim testified that Defendant initially restrained him when Defendant sat on top of him while in the driver's seat. When Defendant sat on Victim, Victim told Defendant to "get out" and that he was leaving, but she remained sitting on him. This testimony provided a factual basis for Defendant's false imprisonment conviction. Although the crime of false imprisonment was complete, it continued as evidenced by the testimony that Victim tried to get out of the car but Defendant constrained Victim by sitting on Victim for the duration of the encounter.

**{13}** We turn next to the jury instructions for the offense of battery against a household member. In order for the jury to have found Defendant guilty of this offense, it had to find, in relevant part, that Defendant: (1) "intentionally touched or applied force to [Victim] by scratching and/or biting him"; and (2) "acted in a rude, insolent or angry manner." *See* UJI 14-390 NMRA; § 30-3-15. The elements of battery are distinct from false imprisonment and as such require the State to present different evidentiary proof of the battery elements.

**{14}** The State presented evidence that Defendant battered Victim by scratching and biting him. Defendant's acts of scratching and biting Victim took place after she initially sat on and restrained Victim in his car. The force Defendant applied to Victim when she bit and scratched him was distinct from the force Defendant applied to Victim when she sat on and restrained Victim in his car against his will. *See Phillips*, 2024-NMSC-009, ¶ 38 (reiterating that a defendant's conduct is not unitary "when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime."). We conclude that Defendant's conduct resulting in false imprisonment was complete before she battered Victim, even though the restraint continued through the commission of a separate crime and that the force she applied to batter Victim was distinct from the force she applied to restrain Victim. *See Dominguez*, 2014-NMCA-064, ¶ 10; *Phillips*, 2024-NMSC-009, ¶ 38.

**{15}**     To the extent Defendant contends that that her acts constituted an ongoing battery such that the State should not be permitted to convict her of multiple crimes, we disagree. In support of this position, Defendant directs this Court to *State v. Mares*, 1991-NMCA-052, 112 N.M. 193, 812 P.2d 1341. In *Mares*, the defendant was convicted of four counts of aggravated battery based on evidence that the defendant "hit the victim over and over again in the face with his fist and choked [the victim] in order to knock her out; choked her once they were in the bushes so that she would not scream and alert the police; pulled her hair to catch her as she was trying to escape; and slapped her for no apparent tactical reason." *Id.* ¶ 26. The defendant argued that each of the aggravated battery convictions should merge into one count because the Legislature did not intend separate criminal punishments for his conduct. *Id.* ¶ 22.

**{16}**     Applying the *Herron* factors, this Court determined that "although there may in fact have been multiple batteries in this case, . . . [t]he victim's testimony lacked detail" about how much of an intervention there was between defendant's acts against victim and the record lacked evidence showing that defendant's intent changed during the course of the attack. *Id.* ¶ 26. This Court held that the evidence "did not permit [an] inference[] that the [batteries] were . . . separate and distinct." *Id.* ¶ 27 (alterations, internal quotation marks, and citation omitted).

**{17}**     Unlike the facts in *Mares*, the evidence here demonstrated that Defendant completed the crime of false imprisonment prior to committing the battery. Moreover, the crime of false imprisonment involved the intent to confine or restrain the Victim against his will, whereas the crime of battery against a household member involved an intent to touch or apply force to the person of another. *See* § 30-4-3 (false imprisonment); § 30-3-15 (battery against a household member); *see also Herron*, 1991-NMSC-012, ¶ 15 (identifying a "defendant's intent as evidenced by [their] conduct and utterances" as a factor in determining whether an act is distinct.). Therefore, we find Defendant's reliance on *Mares* unavailing.

**{18}**     Similarly, in *State v. Garcia*, 2009-NMCA-107, ¶ 9, 147 N.M. 150, 217 P.3d 1048, the defendant appealed convictions of a petty misdemeanor battery and an aggravated battery, arguing the Legislature only intended one punishment for his entire conduct. In *Garcia*, the defendant, an inmate, pushed and hit the victim. *Id.* ¶ 13. Then, another inmate caused the victim to fall to the floor. *Id.* ¶¶ 2, 13. Once the victim was on the floor, the defendant "stomped on and shattered [the victim's] leg." *Id.* ¶ 13. This Court applied the *Herron* factors to determine whether defendant's conduct was sufficiently distinct. *Id.* ¶ 10. This Court concluded that "[t]here was no evidence that [the d]efendant's intentions to commit a battery upon [the victim] were interrupted" or that "[the d]efendant did not intend to injure or cause great bodily harm to [the victim] when [the d]efendant initiated the confrontation" and reversed the lesser of the two battery convictions. *Id.* ¶¶ 14-15, 17. Again, here, the evidence was sufficient to demonstrate Defendant's intent to restrain Victim by sitting on him was separate from her intent to touch and apply force to Victim by scratching and biting him.

**{19}** Finally, Defendant also relies on *State v. Saiz*, 2008-NMSC-048, ¶ 30, to argue unitary conduct can be determined by examining "the quality and nature of the acts, the objects and results involved, and the defendant's mens rea and goals during each act." In *Saiz*, the defendant argued that his convictions for first degree murder and kidnapping violated double jeopardy upon a claim that "the acts constituting the kidnapping were not sufficiently distinct from the acts constituting the murder for two separate crimes to have been committed." *Id.* ¶ 30. In analyzing the double jeopardy claim, our Supreme Court examined the trial record to determine whether the evidence showed that the defendant committed acts constituting separate acts of first-degree murder and kidnapping. *Id.* In other words, whether the jury "could have inferred independent factual bases for the [two] offenses." *Id.*

**{20}** Based on the totality of the evidence presented in support of each crime, the Court concluded that there was substantial evidence supporting the defendant's conviction for kidnapping and first-degree murder because there was evidence that the defendant first restrained the victim for the purpose of sexually assaulting her and that the defendant deliberately intended to make sure the victim never left the location of the sexual assault alive. *Id.* ¶ 34.

**{21}** Here, as in *Saiz*, there is circumstantial evidence that Defendant intended to, and did, restrain Victim in the car in order to keep him from leaving. The restraint commenced when Defendant sat on Victim and continued after Victim told her to get out and throughout Victim's struggle to escape the car. In addition to the restraint, there was separate evidence that Defendant scratched and bit Victim. Under these circumstances, it is reasonable to conclude Defendant's conduct restraining Victim by sitting on him and refusing to release him was separate and distinct from scratching and biting him. In light of the testimony presented during trial, we conclude that Defendant's conduct was not unitary.

**{22}** Because we conclude that Defendant engaged in two acts, separated by sufficient indicia of distinctness, the conduct relied upon for the two convictions is not unitary. As a result, we do not proceed with the second part of the test and consider whether the Legislature intended false imprisonment to be a separately punishable offense from battery. *See State v. Vasquez*, 2024-NMCA-020, ¶ 24, 542 P.3d 806 ("Only if the conduct cannot reasonably be said to be separate do we turn to determine whether the Legislature intended to create separately punishable offenses."). Based on the foregoing, we therefore conclude that Defendant's convictions for false imprisonment and battery against a household member do not violate double jeopardy.

## II. Sufficient Evidence Supports Defendant's Conviction of False Imprisonment

**{23}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt[] beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (alteration, omission, internal quotation marks, and

citation omitted). "[S]ubstantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted), *overruled on other grounds by Martinez*, 2021-NMSC-002, ¶ 26, 72. We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences . . . in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{24}** Here, Defendant does not dispute that she restrained or confined Victim. Instead, Defendant, relying on *State v. Trujillo*, 2012-NMCA-112, 289 P.3d 238, argues that the State failed to prove that Defendant's restraint of Victim was anything more than incidental to the commission of the battery. Defendant argues therefore, that the State provided insufficient evidence to support a separate false imprisonment charge and that her conviction for false imprisonment should be vacated. Defendant specifically argues that because "[t]he only difference between kidnapping and false imprisonment is the mens rea - not the actus reus," the restraint elements of false imprisonment and kidnapping are the same and therefore, the incidental restraint doctrine explained in *Trujillo* applies to false imprisonment.

**{25}** Defendant's reliance on *Trujillo* is misplaced. While this Court in *Trujillo* concluded that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime," *id.* ¶¶ 39-42, we emphasized that this conclusion was based on the facts of that case. *Id.* What is more, although this Court, since the issuance of *Trujillo* in 2012, has had the opportunity to extend the analysis in *Trujillo* to the crime of false imprisonment, we have resolutely declined to do so. Instead, we have patently stated that "[t]his Court's analysis in *Trujillo* applies strictly to the offense of kidnapping and not the lesser-included offense of false imprisonment," *State v. Cruz*, A-1-CA-40422, mem. op. ¶ 34 (N.M. Ct. App. June 13, 2024) (nonprecedential); *see Trujillo*, 2012-NMCA-112, ¶¶ 23-30 (reviewing the history of kidnapping statutes and the nature of the offense, reviewing the history of New Mexico's kidnapping statute, and highlighting the distinction between the kidnapping and false imprisonment statutes and the elements required for each offense); *see also* "*Trujillo*, 2012-NMCA-112, ¶¶ 39-42 (concluding that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime" while emphasizing that the conclusion was based on the "factual circumstances of this case"), and that "[t]his Court has repeatedly declined to extend the *Trujillo* analysis to false imprisonment and has concluded that *Trujillo* applies exclusively to kidnapping." *Cruz*, A-1-CA-40422, ¶ 35; *see, e.g., State v. Dimas*, A-1-CA-37009, mem. op. ¶¶ 19-20 (N.M. Ct. App. Apr. 27, 2020) (nonprecedential) (noting that *Trujillo* has never been applied to false imprisonment and that *Trujillo* "distinguish[ed] kidnapping from the lesser[-]included offense of false imprisonment" based on considerations specific to kidnapping); *State v. Martinez*, A-1-CA-34992, mem. op. ¶ 36 (N.M. Ct. App. Feb. 7, 2018) (nonprecedential) (stating "we note that *Trujillo* is inapplicable to this case because it pertains specifically and exclusively to the offense of kidnapping" in response to the defendant's argument that *Trujillo* should apply to his false imprisonment conviction).

**{26}**     Because we are not persuaded by Defendant contentions, we again decline to expand the analysis of *Trujillo* to the crime of false imprisonment under the facts of this case, and we will not consider this argument further.[1] Therefore, we hold that the false imprisonment conviction was not incidental to the battery conviction.

**{27}**     Based on the facts and evidence previously described in this opinion, we conclude a reasonable jury could infer that Defendant falsely imprisoned Victim by restraining him against his will. The record contains sufficient separate evidence demonstrating that Defendant first restrained Victim and then scratched and bit Victim. The false imprisonment began the moment Defendant restrained Victim in the car and refused to release him after he told her to get out.

## CONCLUSION

**{28}**     For the foregoing reasons, we affirm.

**{29}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**

---

1Neither party fully developed an argument demonstrating why we should or should not extend our holding in *Trujillo* to the crime of false imprisonment.